(152 App. Div. 522.)

. RASQUIN et al. **v.** HAMERSLEY et al.

`(Supreme Court, Appellate Division, Second Department.   September 10, 1912.)

1. PERPETUITIES (§ 6*)—CONSTRUCTION OF WILL.
     A will provided that, if no issue of testator should survive his widow,
     his property should go at her death to male issue of his cousin then
     living, and to the male issue of such of them as should previously have
     died leaving issue, such issue to take the share which his, her, or their
     parent would have taken if living.   It was further provided that, should
     the cousin die without male issue surviving him or surviving testator's
     wife, the property should go to such charitable corporations and in such
     proportions as testator's wife might appoint.   *Held*, that the disposition
     is not invalid as unlawfully suspending the power of alienation, on the
     theory that the contingent gift to the issue of testator's cousin was not
     limited to male issue living at the widow's death, but included after-born
     male issue of female issue.
     [Ed. Note.—For other cases, see Perpetuities, Cent. Dig. §§ 4–56;  Dec.
     Dig. § 6.*]

2. PERPETUITIES (§ 6*)—CONSTRUCTION.
     Whether a will is invalid as unlawfully suspending the power of
     alienation depends, not· on what has happened since testator's death,
     but on what might have happened.
     [Ed. Note.—For other cases, see Perpetuities, Cent. Dig. §§ 4–56;  Dec.
     Dig. § 6.*]

3. WILLS (§ 439*)—CONSTRUCTION—TESTATOR'S INTENTION.  ·
     .   In determining whether a will violates the rule against perpetuities,
     testator's intention as expressed in the will should be first ascertained.
     [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 952, 955, 957;
     Dec. Dig. § 439.*]

4. WILLS (§ 446*)—CONSTRUCTION—VALIDITY.
     Where the construction of a will intended by testator is doubtful, that
     construction which makes for validity is favored.
     [Ed. Note.—For other cases, see Wills, Cent. Dig. § 962;  Dec. Dig. §
     446.*]

5. WILLS (§ 498*)—CONSTRUCTION—"ISSUE."
     The word "issue," when used in a will and unexplained by context,
     means descendants of every degree of remoteness, and, when employed
     in that sense, the descendants of the different degrees take in equal shares
     per capita and not per stirpes;  but the word may be, and frequently is,
     explained by the context to mean "children."
     [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1087–1089;  Dec.
     Dig. § 498.*
     For other definitions, see Words and Phrases, vol. 4, pp. 3778–3782;
     vol. 8, p. 7693.]

6. WILLS (§ 634*)—CONTINGENT REMAINDERS.
     Testamentary gift of a remainder to the issue of a certain person liv-
     ing at a life tenant's death is a contingent remainder, where that person
     was unmarried at testator's death.
     [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1488–1510;  Dec.
     Dig. § 634.*]

7. WILLS (§ 634*)—REMAINDERS—WHEN VESTED.
     Where a will provides that, on the death of a life tenant, the property
     shall go to the issue of a specified person then living, the gift is deemed
     as vested, at the termination of the precedent estate, in the persons who

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

then answer the description of issue, in the absence of words from which a different intent might properly be implied.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1488–1510; Dec. Dig. § 634.*]

8. WILLS (§ 522*)—CONSTRUCTION—GIFTS TO CLASSES.

A testamentary gift to a class is an aggregate gift to a body of persons living, but uncertain in number at the time of making the gift.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 1114; Dec. Dig. § 522.*]

9. WILLS (§ 524*)—CONTINGENT REMAINDERS—VALIDITY.

A contingent estate may be limited to persons, all of whom are unborn at testator's death.

· [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1116–1127; Dec. Dig. § 524.*]

10. WILLS (§ 531*)—CONSTRUCTION—"WHICH HIS, HER, OR THEIR PARENT WOULD HAVE TAKEN IF LIVING."

The phrase, "which his, her, or their parent would have taken if living," is often employed as a conventional phrase, meaning that children or issue of a decedent are to take by representation.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1143, 1144, 1148–1152; Dec. Dig. § 531.*]

11. WILLS (§ 463*)—CONSTRUCTION—TESTATOR'S INTENT.

When testator's intention, as expressed in the will, is reasonably clear, words inconsistent therewith may be disregarded.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 982; Dec. Dig. § 463.*]

12. WILLS (§ 500*)—CONSTRUCTION—"PARENT."

The word "parent," as used in a will, may have a bearing on the sense in which testator employed the phrase "living issue"; the word being confined in its original sense to a father or mother, but being sometimes used in construing wills to denote any lineal ancestor in furtherance of · testator's intention.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 1068; Dec. Dig. § 500.*

For other definitions, see Words and Phrases, vol. 6, pp. 5172–5174.]

Appeal from Judgment on Report of Referee.

Action by William Rasquin, Jr., and another, Lily Warren Beresford's executors, against Louis Gordon Hamersley and others. Judgment for defendants, and plaintiffs appeal. Affirmed on referee's opinion.

The following is the opinion of the referee:

This is an action for an accounting by the trustees under the will of Louis C. Hamersley and for a distribution of his estate. The issues presented call for a construction of certain provisions of the will. The testator died on the 3d day of May, 1883. By his will he gave all his estate, real and personal, to his executors in trust to receive the income and apply it to the use of his wife during her life, and upon her death he gave the estate to his issue per stirpes. He then proceeded as follows: "In the event, however, no issue of mine shall survive my said wife then on her decease I give, devise and bequeath my said estate, real and personal, to the male issue of my cousin J. Hooker Hamersley then living and to the male issue of such of them as shall have previously died leaving issue, such issue to take the share which his, her or their parent would have taken if living. In the event, however, my said cousin shall die without leaving male issue him surviving or surviving my wife .then on the decease of my wife, I give,

devise and bequeath the whole of my said estate, real and personal, to such charitable and benevolent corporations located in the state of New York and incorporated by virtue of the laws thereof and in such shares and proportions as my dear wife shall by her last will and testament or instrument in writing for that purpose made and executed and acknowledged by her, direct, designate and appoint." The testator a few months after making the will died without issue. The testator's widow died on January 11, 1909. The cousin J. Hooker Hamersley was unmarried at the time of the testator's death, but subsequently married and had a son, Louis Gordon Hamersley, who was born before the death of the testator's wife, and who is now living. He is an infant, and his guardian on his behalf claims that he is entitled to the entire estate, as being the sole male issue of J. Hooker Hamersley living at the death of the testator's widow. Certain heirs at law and next of kin of the testator contend that the gift to the male issue of J. Hooker Hamersley is invalid because it violates the rule against perpetuities.

[1] Their contention is that by the clause, "to the male issue of my cousin J. Hooker Hamersley then living, and to the male issue of such of them as shall have previously died leaving issue," the testator intended to provide, not only for male issue of J. Hooker Hamersley living at the death of the life tenant, but also for the after-born male issue of female issue, since the gift was to male issue of those who had died leaving issue either male or female, and that, since such after-born issue might come into existence at a period not measured by lives in being at the death of the testator, the power of alienation was unlawfully suspended. In support of this contention they urge that the word "issue," wherever it occurs in the will, should be taken in its broad meaning of descendants of every degree, and that male issue includes male descendants through females.

It may be conceded that, if the expressed intention of the testator was as claimed by the heirs and next of kin, the rule against perpetuities was violated, and, since the shares of such unborn issue were indefinite and unascertainable, the entire gift to the male issue of J. Hooker Hamersley would be invalid, and the estate would descend as in case of intestacy. But in my opinion that is not the construction of the clause in question which should be adopted. It seems to me that the testator intended that, if he should die without issue, his estate should vest, upon the death of his widow, in the then living sons of J. Hooker Hamersley and in the issue of any deceased son or sons; the latter taking by representation.

[2-4] Before proceeding to state the reasons which I think necessarily lead to this conclusion, it may be proper to recall certain general principles which apply in determining the validity of wills. One of these is that the validity of a will depends, not on what has happened since the death of the testator, but on what might have happened. Although J. Hooker Hamersley left no female issue of deceased issue, yet the validity of the will, tested by the rule against perpetuities, is to be determined precisely as though that contingency had occurred. In testing the validity of the provisions of a will by the rule against perpetuities, it is not enough that the limitation may not violate the rule. It must be apparent that it cannot. The law regards possibilities, and future estates must be so limited that in every possible contingency they will vest within the prescribed limitation. Matter of Wilcox, 194 N. Y. 288–295, 87 N. E. 497; Purdy v. Hayt, 92 N. Y. 457; Herzog v. Title Guarantee & Trust Company, 177 N. Y. 86–99, 69 N. E. 283, 67 L. R. A. 146. We are to remember, also, that the court must first construe the will for the purpose of ascertaining the expressed intention of the testator, and then test its validity as so construed by the rule against perpetuities (Gray, Rule against Perpetuities [2d Ed.] § 629; Colton v. Fox, 67 N. Y. 348–351; Dungannon v. Smith, 12 Cl. & F. 546); and, where the construction is doubtful, that which makes for validity will be preferred (Fowler's Real Prop. Law, p. 315; Du Bois v. Ray, 35 N. Y. 168; Hopkins v. Kent, 145 N. Y. 363, 367, 40 N. E. 4; Matter of Conger, 81 App. Div. 493, 80 N. Y. Supp. 933).

[5] Bearing these rules in mind, we proceed to an examination of the language of the will. The word "issue," when used in a will and unexplained by the context, has the meaning of descendants of every degree of

remoteness (Schmidt v. Jewett, 195 N. Y. 486, 88 N. E. 1110, 133 Am. St. Rep. 815; Soper v. Brown, 136 N. Y. 244, 32 N. E. 768, 32 Am. St. Rep. 731; Drake v. Drake, 134 N. Y. 220, 32 N. E. 114, 17 L. R. A. 664; Chwatal v. Schreiner, 148 N. Y. 683, 43 N. E. 166), and, when employed in that sense, descendants of every degree of remoteness take in equal shares per capita and not per stirpes (Soper v. Brown, supra; Hillen v. Iselin. 144 N. Y. 365, 39 N. E. 368; Phelps v. Cameron, 109 App. Div. 798, 96 N. Y. Supp. 1014). But the word "issue" may be and frequently is explained by the context so as to bear the restricted sense of "children." 2 Jarman on Wills, 949; Palmer v. Horn, 84 N. Y. 516; Chwatal v. Schreiner, 148 N. Y. 683, 43 N. E. 166; Matter of Tenney, 104 App. Div. 290, 93 N. Y. Supp. 811; Emmet v. Emmet, 67 App. Div. 185, 73 N. Y. Supp. 614. That it was so used in the first clause of the paragraph under discussion appears from a consideration of the entire sentence. If the testator intended to use the word "issue" in the clause "to the male issue of my cousin J. Hooker Hamersley then living" in its broad sense, then he included in that clause sons, grandsons, and male issue of every degree living at the death of his widow. This would necessarily include male issue of those of them who had previously died leaving male issue. When, therefore, he added the clause, "and to the male issue of such of them as shall have previously died leaving issue," he must have had in mind certain of the very persons who would have been provided for in the first clause if he there used the word "issue" in its extended meaning, and he must be understood as intending to provide for such persons in the added clause, as well as to provide that they should take by representation, instead of per capita. It follows that he did not intend to use the words "male issue" in the first clause with such an extended meaning as to include those provided for in the added clause, but rather in its restricted meaning of sons. This is the only intelligible construction which can be given to the two clauses if read conjunctively, and it is in accordance with the rule laid down by the authorities: that, where a gift is to issue and the testator proceeds to speak of issue of that issue, he does not in the first instance use the word issue in its most comprehensive sense. Theobold on Wills (6th Ed.) 312, 313; 2 Jarman on Wills, 951; Pope v. Pope, 14 Beav. 593. "Issue of issue must mean issue of children if not children of children." Theobold, supra. It thus appears that the purpose of the first clause was to provide for the sons of J. Hooker Hamersley living at the death of the widow, and that the purpose of the second clause was to provide for the male issue of deceased sons, and also to secure that they should take by representation.

We next inquire when the gift to the male issue of deceased sons was limited to take effect, first looking at the character of the gift generally, and then at the particular language in which it was expressed.

[6] Since, at the time the will was made and at the time the testator died, J. Hooker Hamersley was unmarried, the gift to his male issue was to persons not then in existence. It was therefore a future estate, and, since it was dependent upon the precedent life estate to the wife, it was a contingent remainder. 1 Rev. St. 723, §§ 10, 11, 13; Real Prop. Law (Consol. Laws 1909, c. 50) §§ 37, 38, and 40. It continued to be contingent while the persons to whom or the event upon which it was limited to take effect remained uncertain. 1 Rev. St. 725, § 13; Real Prop. Law, § 40.

[7] The question presented for determination here is when the gift was limited to take effect. The gift, under the first clause, to the sons of J. Hooker Hamersley vested by expressed terms on the death of the widow. It was given to the male issue then living. If the words "then living" do not qualify the second clause, then there is no event expressly named upon the happening of which the gift under that clause takes effect, except the death of the widow which terminated the life estate. In the absence of words from which a different intent might properly be implied, the law construes the gift as vesting at the termination of the precedent estate in the persons who then answer the description of male issue of deceased sons. Ayton v. Ayton, 1 Cox Cases in Eq. 327; Lake v. Ascher, 132 App. Div. 685, 117 N. Y. Supp. 465; Bisson v. W. S. R. R. Co., 143 N. Y. 125, 38 N. E. 104; Hall v. La France Fire Engine Co., 158 N. Y. 570, 53 N. E. 513;.

Matter of Baer, 147 N. Y. 348–353, 41 N. E. 702; Buel v. Southwick, 70 N. Y. 581; Teed v. Morton, 60 N. Y. 502, 506; Cushman v. Horton, 59 N. Y. 149.

[8] This was not a gift to a class, for the reason that none of the persons who were to take were in existence at the death of the testator. A gift to a class is defined as an aggregate gift to a body of persons living, but uncertain in number at the time of making the gift (Fowler's Real Property Law [3d Ed.] p. 241; Matter of Kimberly, 150 N. Y. 90, 44 N. E. 945; Herzog v. Title Guarantee & Trust Company, 177 N. Y. 86–97, 69 N. E. 283, 67 L. R. A. 146), and is distributable to all persons of the class in being at the time appointed for distribution.

[9] A contingent estate, however, may be limited to persons all of whom are unborn at the death of the testator (Purdy v. Hayt, 92 N. Y. 456), and, when a contingent gift is made to a group of such unborn persons, the rule of distribution is the same as in the case of gifts to a class. "In the one case those of the class existing at the death of the testator take a vested interest subject to open and let in persons of the class subsequently born and living at the time appointed for the division; in the other, the happening of the event determines both the vesting and the persons entitled to take." Matter of Smith, 131 N. Y. 239–247, 30 N. E. 130, 132, 27 Am. St. Rep. 586.

In Gilliam v. Guaranty Trust Co., 186 N. Y. 127, 78 N. E. 697, 116 Am. St. Rep. 536, it is said: "The general rule * * * is well established that, when property at a future date is to pass to a certain class of persons, it will be distributed amongst the persons who compose such class at the date of distribution." The intention of the testator, however, is to prevail; and, if he expressed a purpose that other persons than those in being at the death of the life tenant were to share in the estate, effect must be given to that intention.

We are thus brought to the inquiry whether the language of the will requires a finding that the testator intended that issue born at an indefinite period after the death of the life tenant were to share in the estate with those then in existence. The heirs and next of kin insist that such an intent can and should be gathered from certain expressions in the will. It may aid in clearness of apprehension of their claim in this respect to repeat again the sentence under consideration, giving emphasis to the words upon which they specially rely. "In the event however no issue of mine shall survive my said wife then on her decease I give, devise and bequeath my said estate, real and personal, to the male issue of my cousin J. Hooker Hamersley *then living*, and to the *male issue* of such of them as shall have previously died *leaving issue*, such issue to take the share which his, *her* or their parent would have taken if living."

It is claimed that the testator in using the words "leaving issue" meant leaving female as well as male issue, and that, if the latter clause be read as it then properly might be read, "and to the male issue of such of them as shall have died leaving female issue," the male issue of such female issue might come into existence after the death of the widow, and hence we must conclude that in that contingency the testator intended to make a gift to after-born male issue of such female descendants whenever such issue should come into existence. But that is not the only intention which can properly be drawn from such a reading of the words "leaving issue"; for it is possible that sons of J. Hooker Hamersley might have died before the life tenant leaving daughters whose sons were living at the death of the life tenant. And, if the bequest should be regarded as limited to such male issue, effect would be given to the words "leaving issue" construed as the heirs and next of kin claim that they should be construed, and no violation of the rule against perpetuities would result. In that event, male issue would include male descendants through females, a construction which has been adopted by the courts of other states (Wistar v. Scott, 105 Pa. 200, 51 Am. Rep. 197; Wistar v. Gillilan [Pa.] 4 Atl. 815; Oddie v. Woodford, 3 Myl. & Cr. 584; Beckam v. De Saussure, 9 Rich. [S. C.] 546), and not disapproved in this state (Wilson v. Wilson, 76 App. Div. 232, 78 N. Y. Supp. 408).

[10] I am of the opinion, however, that the words "leaving issue" must be read in connection with the context as meaning leaving male issue. The words "leaving issue" are followed by the words "such issue to take the share which his, her or their parent would have taken if living." Now concededly none but male issue were to take. "Such issue" must therefore mean male issue; and, since these words relate back to the immediate antecedent "leaving issue," it follows that male issue only were intended to be included in that phrase. But it is said that the use of the pronoun "her" is inconsistent with this reading of the will. Since males only were to take, the only pronoun which could appropriately be used in connection with parent or ancestor of such males would be "his." The phrase, "which his, her or their parent would have taken if living," is often employed as a conventional phrase meaning that children or issue of a deceased person are to take by representation. The phrase may then be taken as a whole without attaching special significance to particular words, and the draughtsman of the will may be supposed to have so used it in this instance.

[11] When the intention of the testator is reasonably clear, words inconsistent therewith may be disregarded. Denison v. Denison, 185 N. Y. 438, 445, 78 N. E. 162; Matter of Farmers' L. & T. Co., 189 N. Y. 202, 206, 82 N. E. 181; Starr v. Starr, 132 N. Y. 154, 30 N. E. 384.

[12] The use of the word "parent" may also have a bearing on the meaning in which the testator employed the phrase "leaving issue." In its original sense this word is confined to the immediate father or mother. But it is sometimes used in construing wills, in furtherance of the intention of a testator, to denote any lineal ancestor. There is much authority to the effect that, when the word "issue" is used in correlation with parent, it will be taken in the sense of child or children. Silbey v. Perry, 7 Ves. 522, 530; Drake v. Drake, 134 N. Y. 220, 225, 32 N. E. 114, 17 L. R. A. 664; Chwatal v. Schreiner, 148 N. Y. 683, 43 N. E. 166. In Murray v. Bronson, 1 Dem. Sur. 217, Surrogate Rollins reviews the cases down to 1883, and concludes: "The word 'issue' in a will, when used in correlation to 'parent,' in the absence of manifest indications that it is intended to have a broader import, means 'children,' and excludes remoter descendants." But this is not an invariable rule. U. S. Trust Co. v. Tobias (Sup.) 4 N. Y. Supp. 211; Harrison v. McAdam, 38 Misc. Rep. 18, 76 N. Y. Supp. 701; Jackson v. Jackson, 153 Mass. 374, 26 N. E. 1112, 11 L. R. A. 305, 25 Am. St. Rep. 643. Probably the particular phraseology or extrinsic circumstances properly to be considered will, in each particular case, determine the sense in which the words are used. If the word "parent" was used by the testator here in its primary sense, then it is quite clear that by "issue" he meant the grandsons of J. Hooker Hamersley. But I do not consider it necessary to determine that question, because I think it is apparent that the word "issue" in the phrase "leaving issue" is limited by the subsequent clause to male issue. If so limited, such male issue would take on the death of the life tenant, and there could be no violation of the rule against perpetuities. It is not important, therefore, to determine whether it was still further limited.

The heirs and next of kin also attach great importance to the fact that the words "then living" were employed in the first clause but do not appear in the second, a circumstance from which they argue that the testator must have intended that the limitation of the gift to take effect upon the death of the wife in the first instance was not to apply to the gift to the male issue in the second clause. But it does not seem to me that great importance should be attached to this circumstance. A gift on the death of a life tenant to the living sons of a person and to the issue of deceased sons would, in accordance with established rules, vest on the death of the life tenant in the sons and issue of sons then in existence. The use of the words "then living" do not seem to me to have been employed for the purpose of making a distinction in the time when the gifts were to vest, but rather in the designation of the two classes that were to take; that is, living sons and issue of deceased sons.

In the case of Cox v. Wisner, 43 App. Div. 591, 60 N. Y. Supp. 349, affirmed 167 N. Y. 579, 60 N. E. 1109, the language of the will under construction was very similar to that we are considering. The devise was to

the eldest son, but, in case the son should die before the decease of testator's wife without lawful issue living at the time of his death, then the property "to go upon the decease of my said wife to such of my children as shall then be living and the lawful issue of such as may then be dead equally (taking by representation) as tenants in common." The question was whether a son of a child who had predeceased the widow was entitled to share. The court held that the words "then be living" related, not only to children of the testator, but to the issue of such of his children as should have died before the termination of the widow's life estate. The heirs and next of kin rely strongly upon Caldwell v. Willis, 57 Miss. 555. The language there under construction was: "And I hereby devise the money or property to be thus divided to the said Daniel Willis during his life and at his death to his child or children then living and the descendants of such child or children and their heirs for ever." And it was held that this constituted a gift to after-born descendants and was invalid.

It will be observed that there the gift was to a living child and to the descendants of such living child. If it had been as here to the descendants of a child who had previously died, a different situation would have been presented, for then the natural construction would have been that the testator intended that the estate should pass to the descendants of the deceased child at the same time, and with the same effect, as to the living child; but an unqualified gift to a living person and to the descendants of such living person takes in all descendants, and no implication can properly be resorted to to limit the line of descent to the period when the living person is to take. The opinion in that case presents and discusses this distinction. Page 568. The case is therefore not an authority in point. Reference is also made to Foster v. Sutton, unreported. I have read the findings and opinion of the referee in that case. The question there presented would arise in this case if a son of a deceased son of J. Hooker Hamersley had died before the life tenant, leaving a will, and a legatee under such will were claiming to share in the estate. It is not necessary to express an opinion as to the correctness of the decision in that case. So far as it furnishes an analogy in the use of the words "then living," it seems to be inconsistent with the ruling in Cox v. Wisner, supra. Nor does the case of Dougherty v. Thompson, 27 Misc. Rep. 738, 59 N. Y. Supp. 608, seem to me to have any direct relation to the question now before the court. The Matter of Crane, 36 App. Div. 468, 55 N. Y. Supp. 822, reversed 164 N. Y. 71, 58 N. E. 47, is also cited by the heirs at law and next of kin in this connection. That case presented a question as to whether certain future gifts were vested or contingent. The Court of Appeals held that the legacies, being contingent and given to a class of persons, vested in those who answered the description of the persons composing the class, who were capable of taking at the time of distribution. No special light is shed by that case upon the particular question which we are now considering.

I am also referred to a large number of cases in which it has been held that, in determining whether an interest vests at the death of the testator or is contingent, the words "on and after," "then," and "on the death of," and like expressions, are ordinarily construed as indicating the period at which the interest is to vest in possession or enjoyment, and do not control in determining whether a remainder is vested or contingent at the death of the testator. Here the remainder is concededly contingent. In determining the period when it is to take effect, expressions such as those above referred to indicating that the termination of the precedent estate is the event upon which the interests of the remaindermen vest are to be considered but with due regard to any indications in the will of a different intent.

Both parties seek to derive support for their contentions in the final clause of the will giving the testator's widow a power of appointment in favor of charities. The language of the will is as follows: "In the event however my cousin shall die without leaving male issue him surviving or surviving my wife then on the decease of my wife I give, devise and bequeath the whole of my said estate, real and personal, to such charitable and benevolent corporations located in the state of New York and incorporated by virtue

of the laws thereof and in such shares and proportions as my dear wife shall by her last will and testament or instrument in writing for that purpose made and executed and acknowledged by her direct, designate and appoint." Since J. Hooker Hamersley left him surviving the infant defendant Louis Gordon Hamersley, who was born during the life of the life tenant, and since the wife never exercised the power of appointment given to her in the will, this substitutionary provision became wholly ineffectual. It is referred to by the parties merely for the purpose of assisting in the construction of the previous sentence. It might be expected that the final gift to charities would be limited to take effect on the failure of male issue who could take under the previous provision, but the conditions upon which the gift to charity are made to take effect are not so limited. The power of appointment was limited upon the event that J. Hooker Hamersley should die without leaving male issue him surviving or surviving the testator's wife. If a son had been born to J. Hooker Hamersley after the death of the widow, he would not have taken a share in the testator's estate, yet, if he had survived his father, the widow could not have exercised the power of appointment and the estate would have passed as in cases of intestacy. A similar result would occur if the construction claimed for the previous clause by the heirs and next of kin were adopted. The gift to charities is expressed in language which is somewhat difficult of comprehension in view of the prior clause of the will. But it stands by itself, and does not purport to effect a change in the gifts conferred in that clause. Nor in my judgment does it assist in the interpretation of that clause. None of the particular words or expressions to which attention has been drawn disclose to my mind a purpose on the part of the testator that any share of his estate should pass to persons unborn at the death of his widow.

The dominant intention of the testator was to provide first of all for his wife and afterward, if no issue of his survived her for the male issue of his cousin J. Hooker Hamersley, but he did not intend to provide for all the possible male issue of his cousin. Concededly the male issue of his sons who were living at the death of his wife would share in his estate, but none of their descendants were to share. Why, then, should he have made a distinction in favor of the after-born issue of daughters or granddaughters of his sons? If he had intended to make such a distinction, would it not be natural to expect that he would have done so in clear and direct language? "The law favors the vesting of estates as soon as possible after the death of the testator and a will in doubtful cases is construed accordingly; but the question is one of intent." Williams v. Jones, 166 N. Y. 522, 539, 60 N. E. 240, 245; Stokes v. Weston, 142 N. Y. 433, 37 N. E. 515; Scott v. Guernsey, 48 N. Y. 106. "When the intention of the testator is left uncertain and doubtful, that construction should be adopted which is nearest in accord with public policy." Chwatal v. Schreiner, 148 N. Y. 683, 690, 43 N. E. 166, 168.

Moreover, if the testator meant that male issue born to female issue after the death of his wife were to share in his estate, it would be natural that some provision for the security and protection of the shares of such unborn persons should be made. Counsel for some of the heirs have argued from the words of survivorship among the trustees of the trust for the wife, of whom she was one, that the trust was to survive her and was to continue for the purpose of carrying over the share of unborn issue until the contingency of birth occurred. But nothing can be more certain than that the trust was to cease upon the death of the wife for whose maintenance and support it was created. If the testator intended to provide for such unborn issue, he must have contemplated that their shares would pass on the death of his wife to his heirs at law and next of kin or to the other issue. His estate consisted of personal property as well as of real estate. If, after a period more or less remote, such after-born issue came into existence, they would be left to recover their scattered shares as best they might. I do not think that the language of the will justifies a finding that such was the intention of the testator. The expressed intention of the testator as I gather it from the language of the will was that, in the event that he left no issue who survived his wife, then, on her decease, the estate should pass

to the living sons of his cousin J. Hooker Hamersley and to the living male issue of such of them as had previously died.

Under this construction of the will the entire estate passes to Louis Gordon Hamersley.

Argued before JENKS, P. J., and BURR, THOMAS, WOODWARD, and RICH, JJ.

Douglas Campbell, Henry L. Scheuerman, H. H. Snedeker, Francis Smyth, and David B. Ogden, all of New York City, for appellants.

Charles F. Brown, of New York City, for respondents.

PER CURIAM. Judgment affirmed, with costs, on the opinion of James L. Bishop, referee.

---

(152 App. Div. 663.)

### KWIATKOWSKI v. NICHOLS COPPER CO.

(Supreme Court, Appellate Division, Second Department. October 4, 1912.)

1. MASTER AND SERVANT (§ 252*)—INJURY TO SERVANT—NEGLIGENCE—EMPLOYER'S LIABILITY ACT.

The negligent failure of a master to provide a reasonably safe place for a servant to work is a common-law ground for recovery for injuries to the servant caused thereby, unaided by service of notice under the Employer's Liability Act (Consol. Laws 1909, c. 31, §§ 200–204).

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 806; Dec. Dig. § 252.*]

2. MASTER AND SERVANT (§§ 101, 102*)—INJURY TO SERVANT—OBLIGATION OF MASTER—CARE REQUIRED.

A master need use only reasonable care to provide reasonably safe tools and appliances, and he need not so act as to make an accident resulting in injury to servants impossible.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 135, 171, 174, 178, 179, 180–184, 192; Dec. Dig. §§ 101, 102.*]

3. MASTER AND SERVANT (§ 107*)—INJURY TO SERVANT—OBLIGATION OF MASTER—CARE REQUIRED.

A master, who operated a copper working plant, and who in the conduct of his business maintained small tracks supplied with cars merely designed to move heavy material about the factory by means of hand power, was not negligent, at common law or under the Employer's Liability Act (Consol. Laws 1909, c. 31, §§ 200–204), for not supplying the cars with safety brakes, merely because the tracks were constructed on a slightly descending grade; the cars being such as were designed for such class of work, and being free from defects.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 199–202, 212, 254, 255; Dec. Dig. § 107.*]

4. MASTER AND SERVANT (§ 162*)—INJURY TO SERVANT—NEGLIGENCE—FAILURE TO EMPLOY SUPERINTENDENT.

An operator of a copper working plant, maintaining in the conduct of his business small tracks supplied with flat cars on which copper bars were transported about the plant by means of hand power, was not guilty of negligence for failing to employ a superintendent to have charge of the men directed to move the cars, since the work was of the most ordinary character of labor, and any man of common intelligence was competent to perform it without special instruction.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 327; Dec. Dig. § 162.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes