(Surrogate's Court, New York County. October 16, 1913.)

1. WILLS (§ 533*)—CONSTRUCTION—DESIGNATION OF DEVISEES—TAKING PER STIRPES OR PER CAPITA.

Under a devise to testator's children in equal proportion, and in case of the death of any child to go to the child's issue, but if none then to be divided between the surviving children of the testator and the issue of any deceased child, the issue of a deceased child take the share of their parent, rather than per capita with the testator's children, since the term "issue" is only used simpliciter with respect to the issue of a deceased child, and it is apparent that it was the intention of the testa-

---

tor that the issue of a deceased child should only take their parent's share.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 1147; Dec. Dig. § 533.*]

2. WILLS (§ 524*) — CONSTRUCTION — DESIGNATION OF DEVISEES — SURVIVING CHILDREN.

The term "surviving children," as used in the will, means those living at the time of the death of any child.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1116–1127; Dec. Dig. § 524.*]

3. WILLS (§ 533*)—CONSTRUCTION—DESIGNATION OF DEVISEES—TAKING PER STIRPES OR PER CAPITA.

In the limitation to the issue of any deceased child, the term "issue" is used simpliciter, and the interest falling to the issue of any deceased child is to be distributed among such issue per capita, and not per stirpes.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 1147; Dec. Dig. § 533.*]

4. WILLS (§ 524*)—CONSTRUCTION—DESIGNATION OF DEVISEES—"ISSUE."

A devise to testator's children, on the death of any one his interest to be divided among the surviving children and the "issue" of any deceased child of the testator, includes issue of a deceased child conceived, but not yet born, at the death of any of the testator's children.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1116–1127; Dec. Dig. § 524.*

For other definitions, see Words and Phrases, vol. 4, pp. 3782–3792; vol. 8, p. 7693.]

In the matter of the judicial settlement of the accounts of the Farmers' Loan & Trust Company, as substituted trustee under the will of Samson Wallach. Decree entered construing the said will.

See, also, 140 App. Div. 908, 127 N. Y. Supp. 1119.

Austin & McLanahan, of New York City (George C. Austin, of New York City, of counsel), for Mr. Moses.

Leventritt, Cook & Nathan, of New York City (Alfred A. Cook and Franklin H. Mills, both of New York City, of counsel), for Mrs. Gertrude W. Borg.

Leslie J. Tompkins, of New York City, special guardian of Joseph Kaempfer, Vivian Wallach, and Albert J. Erdmann, Jr.

Dawson Coleman Glover, of New York City, special guardian for Edith W. Erdmann.

FOWLER, S. In order to settle the decree in this matter, and facilitate a distribution by the substituted trustee of the estate of the testator, it is necessary for the surrogate to construe the will of Samson Wallach, deceased. The testator left him surviving seven children, four sons and three daughters. His residuary estate was devised and bequeathed by the following clause of the will:

"Third. I give, devise and bequeath all the rest, residue and remainder of my property and estate, real and personal, unto my executors hereinafter named, in trust for the following uses and purposes, to wit, to divide the same into seven equal shares, for which purpose they shall have full power and authority to dispose of and convert any part of my estate into money, and to collect and receive the interest and income thereof, and after paying taxes, insurance, interest, repairs and other necessary expenses, to pay over

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the net income of one of said equal shares to each of my four sons, Leopold Wallach, Joseph G. Wallach, Emanuel Wallach and Hirsch Wallach, semi-annually until they shall severally attain the age of thirty years, and upon my said sons severally attaining the age of thirty years to pay and deliver over to each of my said sons one of said equal shares. And as to the remaining three equal shares, to pay the net income of one of said shares to each of my daughters, Fanny Moses, the wife of Max Moses, Lena Wallach and Gertie Wallach, semi-annually during their natural lives. And upon the death of any daughter leaving issue, then to pay the principal of said share and any unexpended interest thereon to such issue."

The limitations contained in the third clause are modified and completed by the following provisions of the will:

"Fourth. In the event of the death of either of my said sons before attaining the age of thirty years leaving issue, the share of the son so dying shall be paid over to and distributed among the issue *equally, share and share alike;* but if such son so dying shall leave no issue, then such share shall be paid over and distributed among my surviving children and the issue of any deceased child.

"Fifth. In the event of the death of any or either of my said daughters without issue, the share of such deceased daughter shall be distributed among my surviving children and the issue of any deceased child."

[1] Lena Wallach, one of the daughters of testator, died September 28, 1912, without issue. Leopold Wallach, a son of testator, died February 1, 1908, leaving issue. Emanuel, another son, died January 15, 1908, leaving issue. Joseph, another son, died about January 1, 1890, leaving issue. One son and two daughters of the testator are now living, having survived their sister Lena. The question is: What becomes of the corpus of the estate or property held on trusts for the benefit of Lena, the trust having terminated and the corpus being ready for distribution? The trustee is interested in this question only in so far as to see to it that the distribution is in accordance with the will. The guardians of the issue of testator's deceased children urge that under the principle repeated by this court in the Matter of Bauerdorf, 77 Misc. Rep. 655, 656, 138 N. Y. Supp. 673, 682, the distribution must be per capita among the surviving children of testator and the issue of his deceased children. Counsel for the surviving children of the testator, on the other hand, contend for the contrary, in so far as the surviving children of testator are concerned.

In the Matter of Bauerdorf the surrogates of this county had occasion to observe that the legal term "issue" employed simpliciter in testamentary limitations is taken to intend all descendants, and, furthermore, that they shall take per capita, issue having ancestors alive sharing concurrently. The authorities were examined and the modifications, or minor premises, of the principal rule were noticed. It was stated in the opinion in that case that the principal rule yields to "a faint glimpse of a different intention" on the part of a testator. Ferrer v. Pyne, 81 N. Y. 281. The accuracy of the decision in the Matter of Bauerdorf is not questioned in this cause, but it is claimed in substance, by counsel for the adult children of testator, that in the will now here the term "issue" is used simpliciter only in respect of the issue of deceased children of testator, and that this will stands for a different construction from that involved in Matter of Bauerdorf, and

in this I think they are generally right. A careful inspection of the testamentary limitations here for construction discloses a difference.

The will of Mr. Wallach, it will be observed, carried his residuary estate to trustees to be divided into seven equal shares. Four of these shares were to be held in severalty on trusts for testator's four sons nominatim. Three of the shares were to be held in severalty on trusts for testator's three daughters, nominatim. When a daughter came to die, if she had issue, the corpus of the one-seventh so held in trust for her was to go to her issue absolutely or in fee simple. If she died without issue, the will provides that then the corpus of her one-seventh shall be distributed among my surviving children and the issue of any deceased child." The last contingency has happened. The question is: What distribution did the testator intend by the fifth clause of his will?

It is apparent from the will now before me that the testator had in mind primarily the interests of his own children as a class, and that each of them should benefit equally inter se in his estate. In the case of the death of any one of them, being a cestui que trust, testator directed that the corpus of the trust estate should go to the issue of the one so dying, and failing such issue be distributed among his own surviving children and the issue of his deceased children.

In the limitation over of the remainders or executory interests in the estate held on trusts for the benefit of his daughter, testator contrasts his surviving children with the "issue" of any of his deceased children. The term "issue," in other words, is used in this limitation simpliciter only in respect of testator's descendants more remote than his children. It had no application to the "issue" of testator himself. In so far as his own children were concerned, testator contemplated a stirpital division, which takes this case out of the rule applied in Matter of Bauerdorf. That testator ever contemplated that his surviving children should take on an equality with the "issue" of his deceased children is not apparent from the scheme and context of the entire will. It is only in the absence of a contrary intention that the rule followed in Matter of Bauerdorf applies. Here such contrary intention is apparent.

In Ferrer v. Pyne, supra, at the time of making his will the testator had three children living and there were five grandchildren, who were children of a deceased daughter, Irene, and one grandchild, who was a son of another deceased daughter, Isabella. The will bequeathed separate legacies to the three living children and a legacy to the children of Irene and the residuary estate was divided equally between one daughter, who was named, the children of Irene, the son of Isabella and a son of a deceased. It was held that the residuary estate should be distributed per stirpes and that the children of Irene took as a class. The court found a sufficient intention to have the children of the deceased daughter take as individuals instead of collectively. In Vincent v. Newhouse, 83 N. Y. 505, the facts were somewhat similar, except that the children of the testator's son were children of a living son, instead of children of a deceased child of testator. But the court again found sufficient intention to have the children take collectively, instead of individually.

[2] There is here a plain limitation of a definite interest to those of testator's children who should survive their sister Lena. The rule in Bauerdorf's Case has nothing to do with the limitation to the surviving children of the testator who should survive their sister Lena. The surviving children of testator mentioned in the fifth paragraph are those surviving at the time of the death of the daughter Lena. Gilliam v. Guaranty Trust Co., 186 N. Y. 127, 78 N. E. 697, 116 Am. St. Rep. 536; Rasquin v. Hamersley, 152 App. Div. 522, 137 N. Y. Supp. 578, affirmed without opinion 208 N. Y. 630, 102 N. E. 1112; Teed v. Morton, 60 N. Y. 502.

[3] I hold that the corpus held by the trustees for the benefit of Lena Wallach must be distributed as follows: One-sixth each to the three surviving children of testator; one-sixth to the issue of Leopold Wallach, deceased; one-sixth to the issue of Emanuel Wallach, deceased; and one-sixth to the issue of Joseph Wallach, deceased. In the limitation over after Lena's death to the "issue" of each of the deceased children of testator, the term "issue" is used by testator simpliciter, and the rule followed in Matter of Bauerdorf applies; that is to say, the one-sixth falling to the respective issue of any deceased child of testator is to be distributed among such issue per capita, and not per stirpes.

[4] But there is another point suggested here, and it had better be disposed of: From the memorandum submitted by the trustee, it would appear that an infant, Edith W. Erdmann, has been recently made a party to this proceeding. She is the sister of Albert J. Erdmann, Jr., and a grandchild of Leopold Wallach, one of the sons of the testator. Edith W. Erdmann was born April 1, 1913, and Lena Wallach, whose share is the subject of the controversy, died on the 28th day of September, 1912. As all the descendants who were alive at the time of the death of Lena Wallach are included within the term "issue," it would seem that Edith W. Erdmann must also be included. Hone v. Van Schaick, 3 Barb. Ch. 488, 509; Marsellis v. Thalhimer, 2 Paige, 35, c. 40, 21 Am. Dec. 66. The court said in the latter case:

"It is now the settled law, both in England and here, that the infant after conception, but before its birth, is in esse for the purpose of taking the remainder or any other estate or interest which is for the benefit of the infant. Stedfast v. Nicoll, 3 Johns. Cas. 18; Swift v. Duffield, 5 Serg. & R. (Pa.) 38."

The common law has only reached the stage of the Roman law. It was a very old maxim of the Roman jurisprudence, "Nasciturus pro jam nato habetur quoties de commodo ejus agitur."

Settle decree accordingly.