Jones, J.
 

 We conclude that this decedent’s rare book collection passed under the residuary clause of her will rather than under the paragraph containing an enumeration of specific bequests in which the book collection was not mentioned.
 

 For present purposes, the decedent’s will contained three pertinent articles:
 

 "ELEVENTH. I give and bequeath all my personal property,
 
 consisting of
 
 furniture, carpets, curtains, china, linen, miscellaneous prints and pictures, antique chandeliers, Louis XVI mantel, mirror and fireback installed in drawing room in my residence, and miscellaneous bric-a-brac to said Harriet C. Weed to be held and enjoyed by her during the period of her natural life. I have left with my executrix a list of certain articles mentioned in this paragraph of my will which I desire to have given by her to my sister and to my nephews and nieces, except George W. Ronald, Jr. and Peter Ronald. However, this is intended merely as a request to my executrix and is not to be construed as a bequest of my will. Upon the death of said Harriet C. Weed I give and bequeath to the Minneapolis Institute of Arts the 3-Part Directoire Surtout; the antique Italian Louis XV chair covered with antique striped, lavender silk; one Louis XV chair, caned, original vert d’eau color; one 17th Century Spanish dressing table, in red lacquer, Chinoiserie decoration; pair of antique Venetian Consoles; pair of Lyre-Back Directoire side chairs, rush seats, decoration in Grisaille; 17th Century Rustic French chair in needlepoint; Empire garniture of two candelabra and two vases in alabaster and bronze doré; Louis XV jewel casket in porcelain and bronze doré; Flemish choir-desk; and Directoire mahogany chair in needlepoint; and to The Cloisters, Metropolitan Museum, New York, Ñ. Y., the Flemish St. Barbara, in poly-
 
 *192
 
 chromed wood. All of the rest and residue of my personal property
 
 mentioned in this paragraph
 
 is to be divided among my sister and my nephews and nieces, except George W. Ronald, Jr. and Peter Ronald, who have received articles of like kind and quality from their mother, Florence Jones Ronald. If any of these gifts shall not be accepted by the Minneapolis Institute of Arts upon the death of said Harriet C. Weed, then I give and bequeath them to my sister and to my nephews and nieces except George W. Ronald, Jr. and Peter Ronald. (Emphasis added.)
 

 "FOURTEENTH. All the rest, residue and remainder of my estate, both real and personal and wheresoever situate, not herein otherwise disposed of, I give, devise and bequeath to said Harriet C. Weed. I hereby nominate, constitute and appoint said Harriet C. Weed executrix of this my last will and testament and direct that no bond or other undertaking be required of her as such. I authorize and empower my said executrix to sell and convey any and all real property of which I may die seized.
 

 "FIFTEENTH. If, however, the said Harriet C. Weed shall predecease me, or shall die in the course of, or as a direct result of, the same accident, epidemic or other calamity as shall cause my death, or if she shall die within a period of six months after the date of my death, then I give and bequeath from said rest and residue disposed of in paragraph 'FOURTEENTH’ as follows:
 

 "1. To the New York Times Neediest Cases the sum of five thousand dollars ($5,000).
 

 "2. To the New York Herald Tribune Fresh Air Fund the sum of five thousand dollars ($5,000).
 

 "Should there be any residue left, then I give, devise and bequeath five thousand dollars ($5,000) thereof to Old War Horse Memorial Hospital Fund, Lloyds Bank Ltd., Fleet, Hants., England, free of Legacy Duty, and I direct that the same shall be paid to the Treasurer for the time being of the said Fund; and any balance that there may be of said residue to the Minneapolis Institute of Arts for its Maintenance Fund.”
 

 The subject matter of this litigation is a collection of antique, rare and original books left to the decedent by her father and referred to in the record as the "Hershel V. Jones Rare Book Collection”, which she owned at the time of her
 
 *193
 
 death and which had an appraised value of some $80,000. The decedent died on November 14, 1967, and Harriet C. Weed, the decedent’s close friend, principal beneficiary and executor, died on July 14, 1971.
 

 In a proceeding for the construction of the decedent’s will instituted by two of her many nephews and nieces appellant Pierpont Morgan Library took the position that the rare book collection passed under the residuary clause of Article Fourteenth, thereby becoming the outright property of Harriet C. Weed. On this basis the rare book collection would go to the Pierpont Morgan Library on the death of Harriet C. Weed pursuant to a bequest to such effect in her will. The Surrogate held, however, that the rare book collection passed under Article Eleventh—to Harriet C. Weed for her life only and on her death to the decedent’s nephews and nieces designated in Article Eleventh. The Appellate Division affirmed with a divided court. We now reverse.
 

 The standard formulation, of course, is that the courts are to find and implement the intention of the testatrix as that intention may be found to have been manifested in the language of her will. (64 NY Jur, Wills, § 558, p 632.) We observe at the outset that there is no explicit reference to the rare book collection in the will. Hence the occasion for a construction of the provisions which are found in the will. We do not, however, look to evidence dehors the will to speculate as to what provision the decedent might have made with reference to her rare book collection had she chosen to make a specific disposition of it. "The duty of the court is not to make a new will or codicil to carry out some supposed but undisclosed purpose, but to ascertain what the testator actually intended by the language employed by him when properly interpreted”.
 
 (Herzog v Title Guar. & Trust Co.,
 
 177 NY 86, 92.)
 

 Turning first then to Article Eleventh, we note that this article contains an enumerated list of articles of personal property specifically bequeathed to Harriet C. Weed for her life. Precatory reference is made to a separate list given by the testatrix to Harriet C. Weed in which the testatrix had set forth her wishes that Harriet C. Weed distribute certain articles of such personal property to persons identified by the testatrix in the separate list. Disposition is then made of the Article Eleventh personal property on the death of Harriet C. Weed—specified items of furniture to the Minneapolis Insti
 
 *194
 
 tute of Arts and to The Cloisters of the Metropolitan Museum of New York; the residue of such personal property (together with any items not accepted by the Minneapolis Institute of the Arts) to the testatrix’ sister and her nephews and nieces with two explained exceptions.
 

 Nowhere in the detailed provisions of this paragraph is there to be found any reference to books or to the decedent’s library. Nor is there any general language susceptible of the interpretation that Article Eleventh was intended as a catchall paragraph designed to blanket in all tangible personal property not otherwise specifically described. The opening words of the paragraph, "all my personal property” (which standing alone would have supported such an interpretation) are then immediately limited by the particularizing phrase, "consisting of’, followed by the detailed listing. The diction here was not, for instance, "all my personal property, including, etc.”, in which event it could have been argued that the list of specified articles was not intended as an exclusive schedule.
 

 We find nothing to suggest an intention to include within the ambit of Article Eleventh any property other than that specifically identified. The pattern of specificity of disposition of articles of personal property is further confirmed by the presence in earlier articles of the will of various specific bequests of tangible personal property, including a gift of "my copy of Blake’s Songs of Innocence” to the Morgan Library (Article Sixth) and "my Children’s Books” to Harriet C. Weed without limitation to her lifetime (Article Seventh).
 

 Concluding then, as we are obliged to, that the collection of . rare books was not disposed of under the provisions of Article Eleventh, we turn to the residuary clause found in Article Fourteenth. Whereas in the interpretation of the terminology of a specific bequest we would require some affirmative evidence of intention on the part of a testator to include the property in question, the issue is not the same when it comes to construction of a residuary clause. As to the latter, unlike the former, the consequence of exclusion would be a distribution in intestacy, a result disfavored in the law. (64 NY Jur, Wills, § 597, p 673.) Hence in construction of a residuary clause the predisposition is to include the property in question unless there is affirmative evidence that such was not the testator’s intention.
 

 Here Article Fourteenth contains the traditional and famil
 
 *195
 
 iar residuary terminology—"All the rest, residue and remainder of my estate, both real and personal and wheresoever situate, not herein otherwise disposed of’. Unless somehow modified this provision would surely be held a manifestation of intention to sweep up all this decedent’s property as to which there had been no previous disposition.
 

 Respondent nephews profess to find that modifier in the language of Article Fifteenth, which they say by the very penury of its provisions unmistakably discloses that this testatrix had in mind as comprising her residuary estate far less than her rare book collection, to wit, that she must have viewed her residuary estate as including only assets which would have been sufficient to satisfy three $5,000 legacies with perhaps a little left over. In addition to the perspective of construction which favors breadth rather than restriction of residuary clauses, there are two responses. First, and more practical, the courts will never be called on to construe Article Fifteenth. In fact Harriet C. Weed did survive the testatrix and accordingly Article Fourteenth became fully operative and the condition precedent on which Article Fifteenth depends will never be confronted, i.e., Harriet C. Weed did not predecease the testatrix or die in a common disaster or within six months after her death. Second, even if the provisions of Articles Fourteenth and Fifteenth were to be read together, and the scope of Article Fourteenth were thereby deemed somehow to have been cut back by the limited compass of Article Fifteenth, the result would only be a partial intestacy in consequence of an incomplete residuary clause. Such an interpretation could not operate by a form of transfer-back to place within the specific bequests of Article Eleventh items of personal property not otherwise included therein.
 

 We therefore conclude that the decedent’s rare book collection passed to Harriet C. Weed under the provisions of Article Fourteenth of the decedent’s will. Accordingly the order of the Appellate Division should be reversed and the case remitted to Surrogate’s Court, Orange County, for the entry of a decree of construction in conformity with the views expressed in this opinion.
 

 Chief Judge Breitel and Judges Jasen, Gabrielli, Wachtler, Fuchsberg and Cooke concur.
 

 Order reversed, with costs to all parties appearing separately and filing separate briefs payable out of the estate, and
 
 *196
 
 matter remitted to the Surrogate’s Court, Orange County, for further proceedings in accordance with the opinion herein.