OPINION OF THE COURT
Michael H. Feinberg, S.
This is a miscellaneous proceeding for construction of Article third of the decedent’s will brought by the nominated executor, Robert Filipkowski (the petitioner).
*386 Background
Robert Francis Florio (the decedent) died on December 9, 1996, survived by two daughters, Catherine Filipkowski (Catherine) and Margaret Stella (Margaret), his distributees. Margaret has two infant daughters, Gloria Stella and Andrea Stella (the infants), who are relevant to this proceeding. The decedent’s will of July 15, 1992 was admitted to probate on July 7, 1997, and letters testamentary issued to the petitioner. The major asset of the decedent’s probate estate is a two-family house located at 8821 14th Avenue, Brooklyn, New York (the premises). Margaret lives with her family in the top floor apartment of the premises, while Gloria Florio, the decedent’s former wife, occupies the ground floor apartment. Article third of the decedent’s will purports to dispose of the premises; the present dispute concerns the specifics of this disposition.
Article third provides as follows:
“article third: I give, devise and bequeath to Catherine fil-ipkowski, all my rights, title and interest that I may possess at the time of my death in and to any real property that I may own or have interests in, including the house known as 8821 14th Avenue, Brooklyn, New York, together with all improvements made thereon and any all [sic] household furnishings and contents contained herein. I hereby give a right to use such property to Margaret stella. After the demise of Margaret stella, or in the event she waives her right to use such property in writing I direct that such property be sold and the net proceeds of such sale be divided as follows: one half to Catherine and one half to be divided equally between gloria stella and andrea stella, all per stirpes. In the event any beneficiary is below the age of twenty-one at the time of my demise, then I direct that the share to which such beneficiary would be entitled shall be held in trust for his benefit, pursuant to the terms of article seventh, which hereinafter follows.”
At the time of death, the decedent had a fee simple interest in the premises. Consequently, Catherine’s position is that the first sentence of Article third transfers to her absolutely the entire fee simple interest, and that such interest cannot be cut down by a subsequent provision in the will. The guardian ad litem appointed by the court to represent the infants’ interests disagrees. She contends that the decedent intended an eventual sale of the premises and the division of the net sale proceeds, one-half to Catherine and one-half to be divided equally between the two infants, as expressed clearly in the *387 third sentence of Article third. (It should be noted that no one disputes that the second sentence and the first clause of the third sentence of Article third taken together give Margaret the right to use the premises for as long as she wishes, effectively a life estate in the premises.)
The Law and Analysis
The primary purpose in a will construction proceeding is to ascertain and give effect to the testator’s intent as expressed in his/her will (see, e.g., Matter of Carmer, 71 NY2d 781, 785; Matter of Thall, 18 NY2d 186, 192-193; Matter of Fabbri, 2 NY2d 236, 239-240). This intent must be gleaned not from a single word or phrase but from a sympathetic reading of the will in its entirety, giving to the words employed their everyday and ordinary meanings (Matter of Gustafson, 74 NY2d 448; Matter of Jones, 38 NY2d 189; Matter of Rossi, 166 Misc 2d 507). Since the testator’s intent is to be gleaned, if at all possible, from within the four corners of the will itself (Matter of Cord, 58 NY2d 539, 544; Matter of Jones, supra, at 193), the general rule is that extrinsic (paroi) evidence will not be admissible to supply or contradict, enlarge or vary the unambiguous expressions of the testator (Matter of Ragone, 58 NY2d 864; Matter of Cord, supra, at 544; Brown v Quintard, 177 NY 75; Matter of Luposello, 225 AD2d 551, 552; Matter of Knapp, 119 AD2d 676, 677). It is only where the court determines that a will is ambiguous or of doubtful import that it will admit extrinsic evidence to help in discovering the testator’s true meaning (see, Matter of Goldstein, 46 AD2d 449, affd 38 NY2d 876; Estate of Laub, NYLJ, Aug. 30, 1999, at 32, col 3 [Sur Ct, Westchester County, Emanuelli, S.]; 11 Warren’s Heaton, Surrogates’ Courts, § 187.01 [5]; § 190.01 [4] [6th ed rev]; see also, Ordover and Gibbs, Correcting Mistakes in Wills and Trusts, NYLJ, Aug. 6, 1998, at 3, col 1).
Based upon the record before it at the time, the court made an initial finding that Article third of the decedent’s will is ambiguous. The only thing that’s certain and undisputed is that the decedent intended to give Margaret a life estate in the premises. What is entirely unclear is what remainder interest the decedent intended for Catherine. Once the life estate terminates, does Catherine’s remainder interest consist of the entire fee, as indicated by sentence one, or merely of a portion of the fee in the form of one-half the net sale proceeds of the premises, as indicated by sentence three? The language of Article third is so inconsistent and contradictory that the court *388 cannot interpret it as it stands. Since, as already mentioned, it is appropriate in such circumstances to receive extrinsic evidence as an aid in discovering the decedent’s intent (see generally, Matter of Milliette, 123 Misc 745; see also, Matter of Billings, 139 Misc 496, 499; 11 Warren’s Heaton, Surrogates’ Courts, § 187.01 [5]; § 190.01 [4] [6th ed rev]), a hearing in the matter was held before a court attorney-Referee.
At the hearing, the attorney draftsman was permitted to testify over objection (see, CPLR 4503 [b]; Matter of Warsaski, 258 AD2d 379). Having kept no notes or memoranda of his meetings with the decedent, he testified exclusively from memory. He stated that he met the decedent in 1988 or 1989 and spoke with him approximately two to four times during the will drafting process. In addition, he gave the decedent a copy of the will to review prior to the execution date and discussed its terms with him on the execution date. As to the will’s terms, the attorney draftsman recalled that the decedent wanted Margaret to be able to live in the premises but to have no ownership interest therein. The decedent explained to him that Margaret received public assistance benefits for a disability, and he did not want to jeopardize those benefits by putting the premises in her name. Instead, the decedent wanted Margaret’s share of the premises to go to her children, the “infants” herein. Accordingly, the decedent’s will was drafted so that the premises would be sold and the net sale proceeds divided one-half to Catherine and the other half to the infants once Margaret’s life estate ended. (The attorney draftsman’s affidavit to that effect, dated March 16, 1998, was admitted into evidence without objection. Although the affidavit had been prepared by the infants’ guardian ad litem, the attorney draftsman signed it only after reviewing the will and the petition.)
When asked if he realized that the first sentence of Article third gave Catherine a fee simple interest in the premises, the attorney draftsman admitted that the sentence did read that way. He explained, however, that the decedent never told him that he wanted to give Catherine the fee. He said that he has a model will in his computer. It contains the first sentence because most people who come to him to draft their wills begin by leaving a fee simple absolute to the surviving spouse. The attorney draftsman admitted that he made a mistake in this case by failing to edit out the sentence.
Two other witnesses, the decedent’s former wife and the petitioner executor, were also permitted to testify over objection. The court determined that any interest these witnesses *389 might have in the outcome of the proceedings was merely indirect. Consequently, they were not incompetent to testify under CPLR 4519. The former wife, Gloria Florio (Gloria), testified that she and the decedent were married for 35 years and continued to live together in the ground floor apartment of the premises after their divorce in 1985. She said that the decedent wanted her to be present during his conversations with the attorney draftsman because he felt she was “more informed and better able to * * * make a comment or give some advice.” Because of this, Gloria said she knew that the decedent wanted “Cathy [to] receive the house, absolute. It should be in her name.” Gloria further testified that the decedent wanted Catherine to take care of Margaret and to let her live in the house. With respect to the grandchildren, the decedent did not want them to benefit monetarily from the estate, according to Gloria. He just wanted Catherine to take care of everyone, including Margaret’s children, if there was “any need, dire necessity, illness * * * and maybe for education reasons.” However, there was no writing to this effect.
The petitioner executor (Catherine’s husband) testified that he had known the decedent for 19 years and visited with him on a regular basis. During their conversations, the decedent often said that he was going to sign the premises over to Catherine and the petitioner. However, the decedent died without this actually happening. The petitioner also testified that the decedent wanted Catherine to have full ownership of the house but that she was to allow Margaret to live in the house because of Margaret’s condition/illness.
It is clear from the testimony that the attorney draftsman’s recollection of the testator’s intentions with respect to the premises differs markedly from that of the other two witnesses. In reaching a determination in the matter, the court considers, among other things, the demeanor of the witnesses during their testimony and the attorney draftsman’s admission against interest contrasted with the self-interested testimony of the other witnesses. (Since the petitioner is Catherine’s husband, he could benefit indirectly if she is adjudged the sole remainderman. Gloria, who is confined to a wheelchair, indicated she prefers to remain in the premises with which she is familiar and comfortable. She is averse to a change in circumstances which might require the sale of the premises.) In the final analysis, the court finds the attorney draftsman to be the more reliable witness and fully credits his testimony.
The court is well aware that the disregarding or excision of a portion of a will is a desperate remedy and should only be used *390 as a last resort when all efforts to reconcile the inconsistency by construction have failed (see, Matter of Buechner, 226 NY 440; Estate of McKenna, NYLJ, Sept. 22, 1998, at 24, col 6 [Sur Ct, Nassau County, Radigan, S.]; 11 Warren’s Heaton, Surrogates’ Courts, § 187.02 [6] [d] [6th ed rev]). The court is also aware that where a clause is unnecessary and repugnant to other provisions of the will and unexplainable except upon the assumption that it results from error, the clause may be disregarded (11 Warren’s Heaton, Surrogates’ Courts, § 187.02 [6] [d]; § 187.03 [3] [c] [6th ed rev]; cf., Rasquin v Hamersley, 152 App Div 522, affd 208 NY 630). In the present case, there is more than an assumption of error; there is an admission of scrivener’s error which the court credits. Accordingly, the court disregards the first sentence of Article third and finds that upon the termination of Margaret’s life estate in the premises (sentence two), Catherine and the infants will share the remainder as directed by sentence three (Catherine: 50%; the infants: 25% each).
The court is also mindful of two rules of construction that might have been relied on in the present situation. The first rule provides that when, as here, two clauses in a will are irreconcilable so that they cannot possibly stand together, the clause that is posterior in position will be thought to indicate a subsequent intention and will prevail unless the general scope of the will leads to a contrary construction (see, Van Nostrand v Moore, 52 NY 12, 20; see also, Van Vechten v Keator, 63 NY 52, 55; Noble v Thayer, 19 App Div 446, 447; 11 Warren’s Heaton, Surrogates’ Courts, § 187.02 [6] [d]; § 187.03 [3] [b] [6th ed rev]). This rule is rarely applied. It is resorted to only when all efforts to reconcile the inconsistency by construction have failed. In the present case, the court decided that the better choice was to admit extrinsic evidence to aid in discovering the decedent’s intent, rather than apply this little-used rule. However, the court notes that had it resorted to the rule, the third sentence would have prevailed over the first sentence of Article third, and Catherine would still take only the half, not the whole, of the remainder interest.
The other rule that could have been relied on provides that once an absolute gift of real property is made in a will, it cannot be cut down or qualified unless the latter part of the will shows an equally clear intention to do so by the use of words definite in their meaning and by expressions which must be regarded as imperative (see, e.g., Tillman v Ogren, 227 NY 495, 504-505; Matter of Lowe, 24 AD2d 983, affd 18 NY2d 900; Mat *391 ter of Gagliano, 75 Misc 2d 965; Matter of Ford, 28 Misc 2d 394, affd 16 AD2d 683; Matter of Brower, 25 Misc 2d 482). Had it chosen to apply this rule, again the court would have reached the same result. That is so because this court believes that the choice of language in the third sentence of Article third evinces a clear intention to cut down any gift that may have been given by the first sentence, including that of the greatest interest that can be given away, i.e., the fee itself (Matter of Brookfield, 176 NY 138, 146; Turano, Practice Commentaries, McKinney’s Cons Laws of NY, Book 17B, EPTL 6-1.1, at 5). However, the court recognizes that a close question is presented here. Strong arguments could exist for the contrary position that the language of the latter provision is not so clear, definite and imperative as to cut down the absolute gift of a fee. For this additional reason, in reaching its determination the court chose to admit paroi evidence rather than to rely on a rule of construction whose application is questionable in the circumstances.
In sum, the court concludes after a hearing that the repugnant language of Article third was the result of scrivener’s error. The first sentence, which gives Catherine a fee simple absolute in the premises, should have been edited out of the model will contained in the attorney draftsman’s computer program. Accordingly, the third sentence becomes operable and, after the termination of Margaret’s life estate as provided for in the second sentence, Catherine and the infants will share the remainder interest in the proportions as directed.