In the Matter of the Final Judicial Settlement of the Account of THOMAS O. BURNETT, as Sole Surviving Executor of the Estate of JAMES H. BROWN, Late of the Town of Summit, Schoharie County, Deceased.

Surrogate's Court, Schoharie County, December 13, 1928.

Leland C. Jones, for the surviving executor, petitioner.

Golding & Kniffen, for Helena Clay.

Clyde H. Proper, as receiver of Harvey B. Dingman, in person and also for Harvey B. Dingman, individually.

E. A. Dox, for Albert L. Jump, as executor of Julia E. Brown.

William H. Golding, special guardian of Claude M. Reed, an infant.

George S. Ingraham, for the M. E. Hospital in the city of Brooklyn.

BEEKMAN, S.   The decedent, James H. Brown, died on the 16th day of May, 1906.   His will was dated April 17, 1906, and admitted to probate on or about the 13th day of June, 1906, and letters testamentary issued to Thomas O. Burnett and Julia E. Brown. Said Julia E. Brown was the widow of the deceased.   She died on or about the 30th day of March, 1927.   An intermediate judicial settlement of the accounts of Julia E. Brown and Thomas O. Burnett was had in this court by decree made and entered December 22, 1911.

The petition by the surviving executor for the final judicial settlement of the accounts of the surviving executor and for construction of the will of the said deceased, was filed in this court on the 21st day of April, 1928, said petition also praying that a decree of this court be made authorizing and directing said surviving executor to sell the several parcels of real estate belonging to said estate and to apply the proceeds of sale for payment of expenses and disbursements thereof and of the accounting, and the payment first, of the legacies set forth in the " twelfth " paragraph of the will, and the balance remaining, if any, to be paid to the persons mentioned in the " thirteenth " clause of the will, as may be determined by this court; and a citation was duly issued to the persons interested, requiring the parties to show cause why the

account of the said surviving executor should not be judicially settled and allowed, and why a decree of this court should not be made in this proceeding, determining the validity, construction and effect of the disposition of both real and personal property, mentioned and referred to in the several clauses of said will, and determining the true construction of said will, particularly as to the meaning, intent and effect of the " eleventh," " twelfth " and " thirteenth " clauses thereof, and determining whether it was the intent of the testator, James H. Brown, that the real property left by said decedent should be sold and the proceeds thereof used to pay the legacies and bequests set forth in the " twelfth " and " thirteenth " clauses of said will, and determining whether said will construed as a whole, contains an express or implied power of sale of the decedent's real property by the executors or the survivor of them, for the purpose of making distribution of the proceeds thereof to the legatees named in the will and further determining the meaning and the intent of the testator contained and expressed in the " thirteenth " clause of said will, and to show cause why a decree of this court should not be made, authorizing, empowering and directing the petitioner as such surviving executor to sell the several parcels of real estate of which the deceased died seized, for the purpose of paying the legacies in case the court decides that the will does not contain a valid power of sale of real estate, granted to the executors or the survivor of them, and in and by said citation the executor of the last will and testament of Julia E. Brown was cited to show cause in this court why he should not account for all the acts and doings of the said Julia E. Brown, one of the executors of the estate of James H. Brown, deceased, and why he should not pay over to the surviving executor of the last will and testament of the said James H. Brown, any and all moneys and funds which may be found to be due from her as such executrix or individually to the estate of the said James H. Brown, deceased. Said citation was returned with proof of due service thereof, together with waiver of issue and service of citation executed by all parties interested, not named in the citation.

In the 1st paragraph of his will he says: " After all my lawful debts are paid and discharged, I give and bequeath unto my beloved wife, Julia E. Brown, the sum of Fifteen Thousand Dollars," also providing that the same is in full satisfaction of her dower.

By the 2d, 3d, 4th, 5th, 6th, 7th, 8th, 9th and 10th clauses of his will he makes certain provisions and bequeaths to certain persons certain legacies, which, according to the accounts filed on December 22, 1911, were apparently complied with or paid so far

as they could be up to that time; the disposition of a certain mortgage mentioned in the 6th clause, however, will come under consideration for determination as to its status on the accounting.

The " eleventh " clause reads: " *Eleventh*. All the rest, residue and remainder of my *real and personal* estate which I may own or be entitled to dispose of at the time of my death, of *what nature, kind and title soever, the same may be not hereintofore disposed by clauses one to ten inclusive*, I give and bequeath to my wife Julia E. Brown to have and to hold for and during her natural life, and to have the use, benefits and profits thereof as long as she shall live."

The first part of the " twelfth " clause is as follows: " *Twelfth*. At the death of my wife, Julia E. Brown, I give and bequeath out of the *rest, residue and remainder mentioned and set forth in Clause Eleven* of this my will to "— here follow legacies to twenty different persons, relatives, and church, hospital and missionary corporations, the legacies being in different amounts, amounting in the aggregate to $12,700.

The " thirteenth " clause reads: " All the rest, residue and remainder not hereintofore disposed of by clause 12 of this my will, I give and bequeath to nearest relatives *then* living, share and share alike."

While there has been no discussion as to the effect to be given to the 15th clause of the will in which the testator gave to Fred C. Winters his " diamond stud," it is my opinion that that clause is to be treated the same as if the bequest of the " diamond stud " had been included in the first ten clauses of the will.

It will be observed that the " eleventh " clause reads, " all the rest, residue and remainder of my *real* and *personal* estate   *   *   * of what nature, kind and title soever the same may be not hereintofore disposed of by clauses one to ten inclusive."

In the " twelfth " clause he says: " At the death of my wife, Julia E. Brown, I give and bequeath out of the rest, residue and remainder mentioned and set forth in Clause 11 of this my will to " so and so, mentioning the twenty legatees.

The question arises: " What residue and remainder was mentioned and set forth in clause ' Eleventh? ' " The answer is, " all the rest, residue and remainder of my *real* and *personal* estate which I may own or be entitled to dispose of at the time of my death of *what nature, kind and title soever* the same may be not hereintofore disposed of by clauses one to ten inclusive."

Therefore, it logically follows that the legacies mentioned in the " twelfth " clause are to be paid out of both real and personal

property. It is obvious that he regarded his entire estate as the corpus out of which the legacies were to be paid.

The testator evidently regarded those mentioned by name in clauses 1 to 12 as those persons and institutions in whose welfare he was most deeply interested. They were definitely in his mind as objects of his bounty and he gave them different amounts according to what he regarded as appropriate to their needs or the degree of his regard for them. No doubt his mind dwelt upon the likelihood that his widow might survive him many years, and he could not foresee, taking into consideration the uncertainties of life, who of his relatives might be living at the time of the death of his widow. Therefore, he names his nearest relatives living at the death of his widow as those who may take what is left after the death of his widow and the payment of the legacies specifically bequeathed. He could not foresee who might survive his widow. The survivors were, humanly speaking, indefinite and uncertain.

There was a possibility that there might be a surplus left after the provisions of his will down to and including the " twelfth " clause were fulfilled and, therefore, not to leave a possible small fraction of his estate undisposed of, he inserts the 13th clause, in which he leaves the rest, residue and remainder *not hereintofore disposed of* by clause 12 to his nearest relatives living at the death of his widow.

As stated before, the legacies down to and including the 12th clause are definite and the beneficiaries are definitely mentioned. In the 13th clause the identity of the beneficiaries is indefinite and uncertain, depending upon whom Divine Providence should remove before the death of his widow. Is it reasonable to conclude that he intended that those who were *indefinite* — whom he could only name as a class — should take his property at the expense of a cutting down of the legacies which he had definitely specified? Is it reasonable to conclude that he intended that in case there should not be sufficient personal property at the death of his widow to pay in full the legacies given to those *definitely* named and in whom he had shown his special interest, those definitely named should suffer a cutting down of their legacies and that all his real estate should go down to those whose identity was indefinite and uncertain, uncharged with the deficiency of the legacies given by the 12th clause? I do not think so.

Evidence has been introduced tending to show that he must have known, taking into consideration his investments and the kind of property which he owned at the time of the making of the will, that his personal estate would not be sufficient to pay the legacies out of the personal property, and such has turned out

to be the case. As a business man, he was familiar with the likelihood of shrinkage in the value of his notes, accounts, investments and other personal property which he owned. He died a month after the execution of the will; hence it is reasonable to assume that the value of his property on the day of his death was substantially the same as it was on the date of the execution of the will. However, in my opinion, the language of the will, without reference to any extraneous circumstances, shows his plain intent, that his real and personal property should all be merged and brought into one fund and that the legacies mentioned in the 12th clause should be paid in full out of the proceeds of his real and personal property and the balance, if any, distributed to those entitled under the 13th clause. The 11th clause refers to real and personal property and the 12th clause refers to the same property, that is, the real and personal property mentioned in the 11th clause, because in the 12th clause he uses the words: " The rest, residue and remainder mentioned and set forth in Clause 11." Then, referring to the 13th clause, he says: " All the rest, residue and remainder *not hereintofore disposed of by the twelfth clause* of this my will, I give and bequeath to nearest relatives then living, share and share alike."

There is evidence that the will was drawn by a layman. Evidently the draftsman and the testator proceeded on the theory that when legacies were given " out of " real and personal property, the executor had the power of sale over the real estate as well as the personal in order to make a distribution of the property. If there had been any intention on the part of the testator to dispose of his real estate separately, without the legacies being charged thereon, the draftsman, whether an attorney or a layman, could not have failed to express such an intention in drafting the will. If it had been the testator's intention to confine the payment of the legacies to the personal property, very few and simple words would have expressed such intention. That is to say, he would have mentioned his real estate specifically and separately, in case it was not to be devoted to the payment of the legacies mentioned in the 12th clause, in full.

If the testator had said: " At the death of my wife I give and bequeath out of my real and personal property to so-and-so the sum of so-and-so," etc., following it with nineteen other legacies, there could be no doubt that he intended that the proceeds of the sale of his real estate should be devoted to the payment of the legacies in the 12th and 13th clauses.

In the will as written he has in effect expressed the same meaning — because in the 12th clause he says: " out of the rest, residue

and remainder mentioned and set forth in clause Eleven," and " the rest, residue and remainder " mentioned in clause 11 is " all the rest, residue and remainder of my *real* and *personal* estate which I may own or be entitled to dispose of at the time of my death, of what nature, kind and title soever, the same may be not hereintofore disposed [of] by clauses one to ten inclusive."

In the 12th clause he says: " out of the rest, residue and remainder," etc. The words " out of " plainly mean out of the proceeds of the real and personal property, which were intended to be reduced to cash and paid over according to the 12th and 13th clauses. Reading the entire will, an intention is plainly disclosed that his property should all be brought into one fund by the sale of the real estate by his surviving executor on the death of his widow, that the legacies mentioned in the 12th clause should be paid in full and the balance paid to the nearest relatives according to the 13th clause.

While there is no express power of sale given to the executor, nevertheless in construing a will, if a general scheme can be found to have been intended it is the duty of the court to effect the main purpose of the testator.

The main purposes of the will could most obviously and naturally be carried out by the exercise of the power of sale. It is not reasonable, taking all the provisions of the will together, to suppose that the testator intended that the beneficiaries should be compelled to resort to statutory proceedings to collect their legacies. He evinced the utmost confidence in his executors by providing in the will that no bonds be required of them. The only way the property could be brought into one fund as contemplated by the will, is by the executors having the power of sale, which power is implied in and by the will.

Numerous authorities have been cited in relation to the matter under consideration. However, it is a trite saying that no two wills are exactly alike, and, therefore, general principles must govern in the construction of a will in arriving at the intention of the testator. Therefore, I deem it unnecessary to cite numerous authorities in support of the conclusions herein arrived at.

As to the meaning of the " thirteenth " clause, Minnie Colliton, named in the petition as " Minnie O. Brown," is mentioned in the will as " my adopted daughter." However, according to the evidence taken in this case, I conclude that she was not adopted according to the provisions of the statutes of this State and that she does not, therefore, have the legal status of an adopted daughter.

Referring once more to the " thirteenth " clause, it reads: " *Thirteenth.* All the rest, residue and remainder not hereintofore

disposed of by clause 12 of this my will, I give and bequeath to nearest relatives then living, share and share alike."

It is my conclusion that the words " then living " mean living at the death of testator's widow.

It is further my conclusion that the words " nearest relatives " mean those in the nearest degree of consanguinity and that according to the petition and accounts and testimony herein, the nearest relatives living at the death of the widow of the testator were Harvey B. Dingman, nephew; Abram B. Crowe, nephew; Carrie E. Crowe, niece, and Frank Crowe, nephew. *Ennis* v. *Pentz* (3 Bradf. 382) and *Haas* v. *Speenburgh* (122 Misc. 458) support this construction.

Accordingly, it is my conclusion that the true construction of said will and particularly the clauses under consideration is as follows: That the legacies given by the " twelfth " clause became vested at the death of the testator, the payment thereof being postponed to the time of the death of the widow; that there is a valid implied power, authority and direction contained in and given by the will to the surviving executor, upon the death of the widow (or in case of the executor's death before the distribution of the estate to an administrator with said will annexed) to sell the real property of which the deceased died seized, and that out of the proceeds of the real and personal property, after deducting the expenses of administration and commissions of executors, the legacies set forth in the 12th clause are to be paid, and that the balance, if any, remaining is to be paid by the executor to those entitled under the 13th clause of the will; that the meaning of the words " then living " and " nearest relatives," in the 13th clause is, the relatives of the testator in the nearest degree of consanguinity living at the time of the death of the widow of the testator, such nearest relatives living at the time of the death of the testator's widow being Harvey B. Dingman, nephew; Abram B. Crowe, nephew; Carrie E. Crowe, niece, and Frank Crowe, nephew, who take the rest, residue and remainder, share and share alike, after paying in full the legacies given by the 12th clause of the will; and that the bequest of the diamond stud to Fred C. Winters is to be treated the same as if it had been included in the first ten clauses of the will.

A decree will be entered accordingly.