HELVERING, Commissioner of Internal Revenue, v. TETZLAFF et al.

No. 12691.

Circuit Court of Appeals, Eighth Circuit.

March 1, 1944.

Irving I. Axelrod, Sp. Asst. to the Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and L. W. Post, Sp. Assts. to the Atty. Gen., on the brief), for petitioner.

Stanley B. Houck, of Minneapolis (L. E. Melrin, of Minneapolis, on the brief), for respondents.

Before THOMAS, JOHNSEN, and VAN VALKENBURGH, Circuit Judges.

VAN VALKENBURGH, Circuit Judge.

This appeal expressly involves and is limited to an estate tax, and is based upon a petition of the Commissioner of Internal Revenue to review a decision of the Tax Court of the United States. The taxpayers. respondents herein, are the duly qualified executors of Eugene Tetzlaff, deceased, who died on August 10, 1939, at the age of 74 years. The Tax Court found his survivors to consist of his wife, three sons, a daughter and her husband, and five grandchildren. During his life he made transfers of stock to his wife and four children, and the court in its opinion states thus the amounts which the commissioner seeks to include in decedent's gross estate:

"1. The value of stocks transferred to Mary Tetzlaff, the decedent's wife, on or

---

[1] See Rule 52(a), Rules of Civil Procedure for the District Courts, 28 U.S.C.A. following section 723c.

about November 1, 1935, of the agreed value of $28,391.50.

"2. The value of stock transferred to the decedent's four children on November 15, 1935, aggregating $41,707.

"3. The value of stocks of Marble transferred to the decedent's four children on January 13, 1936, at the stipulated figure of $17,520.

"4. The value of the remainder interests in property transferred by the decedent on November 29, 1922, in trust for his wife, with such remainder interests to his children, and stipulated to be worth $18,768.63 at the date of the decedent's death".

The petitioner, in his notice of deficiency, contended that the amounts mentioned in the first three groups are properly includible in the decedent's estate because, he claims, the transfers were made in contemplation of death. The Tax Court found as a fact that these three transfers were not made in contemplation of death and so held. Apart from the respect due the findings of that court upon sufficient evidence, counsel for petitioner, in their brief, advise that the commissioner will not ask this court to consider the contemplation of death issue although included in the statement of points theretofore filed herein. We pass therefore to the other questions raised.

November 29, 1922, decedent executed a trust agreement under which he transferred certain property for the following pertinent purposes:

"First: For the term of ten years from the date of this Trust Agreement (unless modified as hereinafter provided), the net income from the trust fund shall be reinvested and added to the principal.

"Second: From and after the termination of said ten year period, the net income from the then trust fund shall be paid to Mary Tetzlaff, the wife of the Donor, in quarterly installments for the term of her natural life.

"Third: Notwithstanding the foregoing provision relating to an accumulation period of ten years, said Mary Tetzlaff, after the expiration of five years from the date of this Agreement and with the written consent of the oldest child of the Donor then living, may by written direction of the Trustee terminate said period of accumulation so as to permit the paying to said Mary Tetzlaff, of the net income from the then trust fund thereafter.

"Fourth: Upon the decease of Mary Tetzlaff, the wife of the Donor, the trust fund shall then be divided equally between the children of the Donor, namely: Walter Tetzlaff, Frieda Neils, Arthur Tetzlaff, and George Tetzlaff, but no principal shall be paid to any child of the Donor until such child has attained the age of Thirty (30) years; the net income from the undistributed share of such child to be paid to such child in semi-annual installments in the meantime, provided, however, that at any time within six (6) months after the decease of said Mary Tetzlaff, the Donor shall have the right by written direction to the Trustee to postpone the time of distribution to any or all of said children for a period not exceeding twenty (20) years, from that time irrespective of the ages of said children, and any such modification so made shall control as to the distribution of principal to said children with the same effect as if made a part of this original document. It is provided further that should the Donor at any time hereafter cause to be postponed the time for the distribution of principal that during said postponed period the majority of the then living children, who are then beneficiaries of the income from the trust fund, shall have the power to appoint the persons to whom all or any part of the net income from this trust shall be paid for part or all of said postponed period. Such power of appointment shall be exercised by written certificate to be delivered to the Trustee. Should there be only two children then living, who are the Donees of such power, then the older of said children shall be considered a majority hereunder.

"Fifth: The surviving child of any deceased child of the Donor shall take the same share of income and of principal and at the same date their deceased parent would have been paid such income or principal if living. The share of any deceased child of the Donor leaving no surviving children, shall be added to the shares of the other children of the Donor, and the surviving children of any other deceased child of the Donor.

"Ninth: The Donor expressly surrenders all right and power to amend, modify, or revoke in whole or in part, the trust hereby established, except with the written consent of all of the beneficiaries herein specifically named who are then living, except to the extent and under the circumstances stated, in subdivision Fourth hereof".

The petitioner, in his notice of deficiency, contends that the value of the remainder interests in property transferred by the decedent in trust on November 29, 1922, and stipulated to be worth $18,768.63 at the date of his death, should be included in his gross estate for estate taxation purposes under Section 811(c) and (d) of the Internal Revenue Code, Title 26 U.S.C.A. Int.Rev. Code, § 811(c, d).

Section 811:

"The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States. * * *

"(c) Transfers in contemplation of, or taking effect at death. To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, or of which he has at any time made a transfer, by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (1) the possession or enjoyment of, or the right to the income from, the property, or (2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom; except in case of a bona fide sale for an adequate and full consideration in money or money's worth. Any transfer of a material part of his property in the nature of a final disposition or distribution thereof, made by the decedent within two years prior to his death without such consideration, shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this subchapter;

"(d) Revocable transfers

"To the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona-fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power (in whatever capacity exercisable) by the decedent alone or by the decedent in conjunction with any other person (without regard to when or from what source the decedent acquired such power), to alter, amend, revoke, or terminate, or where any such power is relinquished in contemplation of decedent's death."

In its Memorandum Findings of Fact and Opinion, the Tax Court states the issues as follows:

"1. Whether or not the transfer of certain stocks made by the decedent to his wife and children in 1935 and 1936 were in contemplation of death.

"2. Whether or not the enjoyment of the income from such transfer to his wife on November 1, 1935, was retained by the decedent during his life.

"3. Whether or not the decedent retained the power to alter or amend the terms of the trust instrument which transferred certain property for the benefit of his wife, by a trust instrument dated November 29, 1922".

Considering the terms of subdivision (c), it will be seen that, by the trust agreement of November 29, 1922, decedent has made no transfer in contemplation of death, in which he retained for his life or for any period not ascertainable without reference to his death, or for any period which does not in fact end before his death, (1) the possession or enjoyment of, or the right to income from the property, or (2) retained the right, either alone or in conjunction with another, to designate the persons who shall possess or enjoy the property or income therefrom. That limits and exhausts the powers which Congress has seen fit to confer by subdivision (c) of the taxing act, within the issues framed.

The Tax Court in its findings of fact and analysis of the testimony upon the contemplation of death issue found that, in November 1935, decedent's net worth was $400,000, or a little greater; that his physical condition both before and at the time of the transfers afforded no ground for concluding that he contemplated death,—on the contrary that his interest in and care of his health indicated that he was devoting his attention and thought to the extension and enjoyment of life. The companies in which he held stocks had been built up largely by his efforts, and were practically controlled by his family. He was of opinion that they could then be operated successfully by his children. He desired to be relieved of as much responsibility as possible in the management of these companies, in order that he might travel and

enjoy life more fully. This was his incentive in making these transfers to his wife and children, in the hope that the stocks might be retained and controlled in the Tetzlaff family.

However, in the fourth subdivision of this trust agreement it was provided that, at any time within six months after the decease of his wife, Mary Tetzlaff, the donor, if he survived her, should have the right to make a certain modification or amendment, by written direction to the trustee, to postpone the time of distribution of principal to the children with the same effect as if made a part of the original document. By this amendment no reversion of interest to the donor was provided or contemplated; and by the ninth subdivision the donor expressly surrenders all right and power to amend, modify, or revoke, in whole or in part, the trust thereby established, except to the extent and under the circumstances stated in subdivision fourth thereof.

By subdivision (d) of Section 811 of the Revenue Code the value of any interest in a transfer which a decedent has made by trust, or otherwise, where the enjoyment thereof is subject at the date of his death to any change through the exercise of a power to alter, amend, revoke, or terminate, or where any such power is relinquished in contemplation of decedent's death, must be included in the value of the gross estate of the decedent for estate taxation purposes. But because Mary Tetzlaff, the wife, was still living at the date of his death, decedent had no power, from whatever source acquired, to alter, amend, revoke or terminate the enjoyment of the property and income transferred by this trust, and the Tax Court in conformity to the express terms of the trust agreement and of subdivision (d) of the Act so held.

The real subject of taxation of this nature has been acutely familiar to the courts since its exercise. It is thus admirably and succinctly stated by Mr. Justice Stone in Chase National Bank v. United States, 278 U.S. 327, 338, 49 S.Ct. 126, 129, 73 L.Ed. 405, 63 A.L.R. 388:

"Termination of the power of control at the time of death inures to the benefit of him who owns the property subject to the power and thus brings about, at death, the completion of that shifting of the economic benefits of property which is the real subject of the tax, just as effectively as would its exercise."

Compare Klein v. United States, 283 U.S. 231, 234, 51 S.Ct. 398, 75 L.Ed. 996. So here, no power of control in decedent existing at the date of decedent's death, there were no economic benefits to shift and support the tax.

It is uniformily recognized that "the power of taxation is a fundamental and imperious necessity of all government, not to be restricted by mere legal fictions." Tyler v. United States, 281 U.S. 497, 503, 50 S.Ct. 356, 359, 74 L.Ed. 991, 69 A.L.R. 758. In that case Mr. Justice Sutherland referring to the opinion of Mr. Justice White in Knowlton v. Moore, 178 U.S. 41, 57, 20 S.Ct. 747, 44 L.Ed. 969, says:

"The question here, then, is, not whether there has been, in the strict sense of that word, a 'transfer' of the property by the death of the decedent, or a receipt of it by right of succession, but whether the death has brought into being or ripened for the survivor, property rights of such character as to make appropriate the imposition of a tax upon that result (which Congress may call a transfer tax, a death duty or anything else it sees fit), to be measured, in whole or in part, by the value of such rights."

In the case before us the death of the decedent neither brought into being nor ripened for the survivors property rights of such character as to make appropriate the imposition of a tax upon that result. In its opinion the Tax Court stated that respondent (petitioner here) attempted to raise a new issue in his brief after submission, asserting that the property transferred to decedent's wife on or about November 1, 1935, was used to discharge decedent's obligations to support his family under the provisions of the Minnesota law. Hill v. Commissioner of Internal Revenue, 8 Cir., 88 F. 2d 941. This claim is based upon statements made by decedent sometime previous to executing this transfer of November 1, 1935, from which this inference is sought to be drawn. The Tax Court in its opinion states that no such holding was made by petitioner in the notice of deficiency and no such issue was raised by the pleadings. It declined to consider the question under those conditions. It may be added that the petitioner took no steps during the hearing properly to raise this issue. The Tax Court, due to the great pressure of its work, must necessarily insist upon regularity in the preparation of the cases brought before it. We do not think that the indefiniteness and

insufficiency of the testimony tendered in support of this claim justifies a resubmission of that issue.

It follows that the judgment of the Tax Court upon the issues presented should be affirmed, and it is so ordered.