In the Matter of the Accounting of Iva C. Loucks, as Surviving Administratrix C.T.A. of the Estate of Ezra M. Robinson, Deceased.

Surrogate's Court, Broome County, May 24, 1946.

*Frank M. Hays* for petitioner.

PAGE, S. The decedent, Ezra M. Robinson, died testate and a resident of Broome County, New York, on or about the 15th day of February, 1922. His last will and testament was duly admitted to probate in this court on the 11th day of June, 1926, and letters of administration *c.t.a.* duly issued to Workers Trust Company of Johnson City, New York, and Virgil W. Fredenburg. In connection with a previous accounting in 1942, said administrators *c.t.a.* were permitted to resign and present petitioner, Iva C. Loucks, was duly granted letters of administration *c.t.a.* and has since the date of same, viz., July 9, 1942, up to and including the present time, been, and now is the duly qualified and acting administratrix *c.t.a.* herein.

The present final accounting proceeding is occasioned by the fact that the life beneficiary, testator's widow, is now deceased and it is in order for the representative of the estate to seek her final discharge as such.

In her petition herein, among other things, this court is petitioned to construe the last will and testament here in question, in relation to the ascertainment and qualification of remaindermen presently entitled to receive distribution of the residuary assets of the estate or proceeds thereof.

This involves the construction of the words, " upon the death of my said wife ", and " then living ", as the same were employed by the testator in drafting his will and occurring in paragraph designated " Third " thereof, which reads as follows: " Third. — I give, devise and bequeath all of the rest, residue and remainder of my property real and personal of every kind and description, and wheresoever situated to my said wife, Mary E. Robinson for her use and benefit for and during the period of her natural life, and *upon the death of my said wife*, Mary E. Robinson I give, devise and bequeath all of my said real and personal property mentioned in this Paragraph of this Will to my children and the children of my said wife, Mary E. Robinson *then living* absolutely and forever to be equally divided between them, share and share alike." (Italics supplied.)

As of the date of death of testator, the persons falling within the class or classes designated by the above-quoted paragraph " Third " of his last will and testament were seven children, testator's own sons and daughters, and two children, sons of testator's widow, and the above-named life tenant of his entire residuary estate. The names of the first group are: Ollie A. Pendleton, Iva C. Loucks, Elmer A. Robinson, Mary M. Harpman, Gertrude E. Peterson, Charles H. Robinson and

Guy M. Robinson. The names of the second group are: Albert A. Fredenburg and Virgil W. Fredenburg.

All of the above-named members of these two groups survive at the present time and are all parties to the present proceeding, with the exception of one of the members of the second group, a son of testator's widow, Virgil W. Fredenburg, who died on or about the 19th day of May, 1943, leaving him surviving a son, Duane H. Fredenburg, and a daughter, Gretta R. Bradley, and no other distributee. The two last-named persons have been made parties herein and the practical effect of the sole question of construction here involved is as to their entitlement to take the share their father, Virgil W. Fredenburg, would have taken had he survived his mother, the testator's widow.

The determination of this question is dependent upon the nature of the remainder interest designated by the will in favor of each member of the two groups named therein as remaindermen, whether this was a vested, contingent or contingently vested future interest.

It is established by controlling authority that adverbs of time and other forms of expression used for the purpose of designating the time when remaindermen are entitled to take over actual possession and enjoyment of a beneficial future interest provided for them in a will do not relate to or affect the time of vesting of such future interest. In other words, such an expression as " upon the death of my said wife " does not control the date of vesting. Unless other language so indicates, the remainder interest vests immediately at the testator's death, subject only to a deferment of the use and enjoyment of the benefit intended by the testator to be conferred upon those whom he has designated to take or participate in the remainder. (*Connelly* v. *O'Brien*, 166 N. Y. 406; *Matter of Kelly*, 167 Misc. 751; *Matter of Curlett*, 166 Misc. 944, 947, and cases cited.)

Therefore, if, " upon the death of my said wife " were the only language here called in question, there would be no serious question at all in the present case. The issue to be presently determined arises only because of the further words " then living ", the " then " clearly referring to the previous expression, " Upon the death of my said wife ", used by the testator in the same sentence of paragraph " Third " of his will.

It is urged that there is no significance to the words " then living " as used in their present context. It is contended that section 40 of the Real Property Law produces the effect of making these words mere surplusage.

Section 40 of the Real Property Law provides as follows: " A future estate is either vested or contingent. It is vested, when there is a person in being, who would have an immediate right to the possession of the property, on the determination of all the intermediate or precedent estates. It is contingent while the person to whom or the event on which it is limited to take effect remains uncertain."

This statutory regulation is equally applicable to remainders of personal property. (*Stringer* v. *Young*, 191 N. Y. 157; *Matter of Weaver*, 253 App. Div. 24, affd. 278 N. Y. 605.)

It is true that the situation here presented would result in vested remainder interests upon the sole basis of there having been, at date of testator's death, persons who *would have had* an immediate right to the " possession of the property, on the determination of all the intermediate or precedent estates." There is only one of these whose status is here in question, testator's stepson, Virgil W. Fredenburg. He was living at the date of testator's death. Had the widow's life interest terminated before his death instead of after it, of course, there is no question but that he would have had the same equal interest as all the other remaindermen answering to the same class description as himself. His interest would be, as is contended, within the principle as laid down in the case, applying the above-quoted statutory definition of a vested remainder, of *Moore* v. *Littel* (41 N. Y. 66). Between the testator's death and that of his widow, he was a person in being *who would have* an immediate right to possession of the remainder interest upon the ceasing of the precedent estate.

The third sentence in section 40 of the Real Property Law provides that a future interest " is contingent while the person to whom *or* the event on which it is limited to take effect remains uncertain." (Italics supplied.) If any effect at all is to be given to the plain language employed by the testator " then living ", the interest of his stepson, Virgil W. Fredenburg, although vested according to the provision of sentence two of this section, is contingent according to sentence three of the same. In other words, the testator had chosen to and did lay down the condition that the remainder interests of the two children of his wife, his own stepchildren, were to be based upon the condition of their being " then living ", the " then " definitely and unquestionably referring to the date of the death of his widow.

The difficulty, or, we may say, impossibility, of applying the provisions of section 40 of the Real Property Law, involving

the definite characterization of all future estates às being either vested or contingent, has been the subject of extensive observation by not only courts but also the most able writers upon this subject. (See 3 Bradford Butler on New York Surrogate Law and Practice, § 2017.) The situation there dealt with would have been very well exemplified by the present facts. (See, also, *Matter of Terwilligar*, 135 Misc. 170, 183, affd. 230 App. Div. 763; also, *Matter of Barnes*, 155 Misc. 320, 330–331.) Section 40 of the Real Property Law enunciates such inconsistent definitions, at the same time, completely ignoring future interests vested only contingently (otherwise frequently denominated as " vested subject to being divested ") that it has, quite deservedly, come to be regarded as only an abortive attempt by the Legislature to cut the Gordian knot in relation to vestiture of future interests. In cases like the instant proceeding, the only applicable law is case law.

*Matter of Embree* (9 App. Div. 602, affd. 154 N. Y. 778), urged as an authority controlling the present situation, is entirely inapplicable. In that case, similarly to the instant case, the words " who might then be living " were used with reference to remaindermen and to a future time substantially as in the present case. However, the court in the *Embree* case (*supra*), as closer study of its underlying facts shows, did not deny recognition to the testator's intent as shown by the words last above quoted. These words refer to any child or children of him and his wife " who might then be living ". The will in that case provided further that if there should be none such surviving or living at the death of his wife, then the children of a brother, their heirs, executors and administrators, were to take equal shares of the remainder. In this case the fact was that testator left no issue. The words in the *Embree* case (*supra*) " then living " had no application to the remaindermen who actually took. They related only to the testator's and his wife's own child or children. Therefore, the *Embree* case (*supra*) has no application at all to the present situation.

*Connelly* v. *O'Brien* (166 N. Y. 406, *supra*) is another case submitted as construing language very similar to the expression " then living " as found in the present proceeding. In that case the testator had given all to " my wife Rose during her life and then to such of my children as may then be alive, share and share alike." In that case (see p. 409), the court stated that the word *then* (meaning the second " then ") " must be understood to refer to some precedent event, and the only event to which it can refer, according to the language employed, is the death of the testator ". The court observed in that case

that (unlike the present case) the testator had referred to no other death than his own. Here, on the other hand, the " then " cannot rationally be regarded as referring to any antecedent event other than " the death of my said wife ".

A case exemplifying practically the identical use of language as here found was *Matter of Brown* (133 Misc. 519). Finding that the words " then living " related to the date of death of testator's widow, the court, accordingly, held that remainder interests to a class, " my nearest relatives ", could not determine and finally vest until the occurrence of the event upon which they were predicated.

In the present case the remainder interests of testator's stepsons were to a class. This being so, in the light of the two related expressions in paragraph " Third " of the testator's will, a determination of the class cannot be made until the time set by the testator. To do otherwise would be to do violence to his clearly expressed direction.

The expression " then living " is one of frequent employment in relation to future interests. It seems quite remarkable that reported adjudications as to the devolutionary effect of these words are so few in this State. This expression has been the bone of contention in many cases arising in other States. (See cases cited in 41 Words and Phrases, pp. 519–522, and 1946 Cum. Pocket Supp., p. 104.) The practically unanimous application of these words in determinations of their significance in the cases therein cited and digested (e.g. in Massachusetts, Pennsylvania and numerous other States) is entirely in support of the same construction as I find to be required in the present proceeding.

It is a recognized principle that the law will sometimes stretch a point somewhat in favor of the vesting of a remainder interest at the earliest possible moment. (*Hersee* v. *Simpson*, 154 N. Y. 496, 500.) However, this does not mean that courts are warranted in doing so when such construction involves a flagrant ignoring of testamentary direction, plainly and clearly expressed. So long as the testator did not violate or attempt to circumvent any established principle of public policy, he had an absolute right to direct the inception of the remainder interest here in question as he chose and intended to do. The effectuation of an intelligibly expressed testamentary intent, not violating any such principle, is the paramount duty of any tribunal having jurisdiction of the proceeding in which such an expression of testamentary intent is questioned.

Enter decree accordingly.