Barnett HOLLANDER, Executor of the
Will of Lester Field, Deceased,
Plaintiff-Appellant,

v.

UNITED STATES of America,
Defendant-Appellee.

No. 246, Docket 24276.

United States Court of Appeals
Second Circuit.

Argued May 17, 1957.

Decided Oct. 1, 1957.

Clark, Chief Judge, dissented.

Sidney J. Schwartz, New York City, for appellant.

Paul W. Williams, U. S. Atty., New York City, for appellee. Robert J. Ward and Harold J. Raby, Asst. U. S. Attys., New York City, of counsel.

Before CLARK, Chief Judge, and SWAN and POPE, Circuit Judges.

SWAN, Circuit Judge.

Lester Field, a citizen of the United States domiciled in the state of New York, died on November 16, 1937 leaving a will which was duly admitted to probate and of which the appellant was appointed executor. The present action seeks recovery of part of the estate tax paid many years ago. It is founded upon a retroactive tax relief measure enacted as section 607 of the Revenue Act of 1951.[1] The amount claimed is $25,-811.95, with interest from June 30, 1952, the date of filing a claim for refund.[2] This claim was denied on October 20, 1952, and suit was brought within less than two years thereafter.

In the court below the defendant, before answering, moved to dismiss the complaint. This motion was denied by Judge Murphy in a well-reasoned opinion which held the complaint good.[3] Thereafter an answer was filed and, as there were no disputed facts, both parties moved for summary judgment. The motions came on before Judge Dimock, who denied the plaintiff's motion, granted the defendant's, and dismissed the complaint in an opinion not reported. The Government makes no attempt to support the decision in its favor on the ground taken by the District Judge.[4]

The estate tax was determined after extensive litigation.[5] The question decided was the proper valuation of the corpus of an *inter vivos* trust under section 302(c) of the Revenue Act of 1926, 44 Stat. 9, 70, 26 U.S.C.A.Int.Rev.Acts, page 227, which required including in a decedent's gross estate the value at his death of all property "To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise * * * intended to take effect in possession or enjoyment at or after his death * * *." On June 8, 1922 Lester Field had transferred to a trustee property which at the date of his death was valued at $307,452.82. The trust instrument provided that $150,000 should be set aside for the settlor's widow. This sum the taxpayer has at all times conceded was properly includable in the gross estate, and the litigation concerned the remaining $157,452.82. As to this sum the trust was to continue during the lives of the settlor's two nieces, but if both died before his death the corpus would have been paid to him rather than

1. "Sec. 607. Transfers Conditioned Upon Survivorship.

"In the case of property transferred by a decedent dying after March 18, 1937, and before February 11, 1939, the determination of whether such property is to be included in his gross estate under section 302(c) of the Revenue Act of 1926 (44 Stat. 70) as a transfer intended to take effect in possession or enjoyment at or after his death shall be made in conformity with Treasury Regulations in force at the time of his death." 26 U.S.C.A. (I.R.C.1939) § 811 note.

2. The District Court had jurisdiction under 28 U.S.C.A. § 1346.

3. Field's Estate v. United States, D.C.S.D. N.Y., 131 F.Supp. 76.

4. The decision was based on the provision of a trust created by Field in 1922, by which he reserved a contingent power to reduce or cancel gifts to his children. As he died without issue, the power never became effective and was not taxable. See Commissioner of Internal Revenue v. Singer's Estate, 2 Cir., 161 F.2d 15, 18; Jennings v. Smith, 2 Cir., 161 F.2d 74, 77; Commissioner of Internal Revenue v. Estate of Ballard, 2 Cir., 138 F.2d 512; Helvering v. Tetzlaff, 8 Cir., 141 F.2d 8, 11; Day v. Commissioner, 3 Cir., 92 F.2d 179; Tait v. Safe Deposit & Trust Co. of Baltimore, 4 Cir., 74 F.2d 851, 858.

5. Estate of Lester Field, 2 T.C. 21, reversed in Field's Estate v. Commissioner, 2 Cir., 144 F.2d 62, which in turn was reversed in Commissioner of Internal Revenue v. Estate of Field, 324 U.S. 113, 65 S.Ct. 511, 89 L.Ed. 568.

to the beneficiaries named in the trust instrument. At his death he was survived by the two nieces and the named beneficiaries as well as his widow. Because of the retained possibility of reverter the trust corpus was "swept into the gross estate and was taxable accordingly." Commissioner of Internal Revenue v. Estate of Field, 324 U.S. 113, 114, 116, 65 S.Ct. 511, 512, 89 L.Ed. 568.

Provisions of the Revenue Acts like those of section 302(c) of the 1926 Act respecting transfers to take effect at or after the settlor's death were for many years the source of fluctuating judicial interpretation not finally settled until 1949.[6] At the date of Field's death, the existence of a possibility of reverter did not, under the Treasury Regulations then in effect, subject the property to estate tax.[7] Nevertheless, as already stated, the trust corpus was held to be includ-

able in the gross estate. Shortly after the decision in Spiegel's Estate and Church's Estate, cited in note 6, supra, Congress amended the Internal Revenue Code of 1939 to provide retroactive tax relief for certain estates prejudiced by the Supreme Court's change of position.[8] Only estates of decedents dying after February 10, 1939 were given such relief. In 1951 retroactive relief was extended to some estates of persons dying between March 18, 1937 and February 11, 1939.[9] This is the provision upon which the appellant relies. The Government contends that the 1951 amendment did not help Field's estate because (1) any right to a refund was barred by the statute of limitations and the prior litigation in the Tax Court;[10] (2) the 1951 amendment was impliedly repealed by the Technical Changes Act of 1953, section 207(b);[11] and (3) even under the

6. See May v. Heiner, 281 U.S. 238, 50 S.Ct. 286, 74 L.Ed. 826; Klein v. United States, 283 U.S. 231, 51 S.Ct. 398, 75 L.Ed. 996; Helvering v. St. Louis Union Trust Co., 296 U.S. 39, 56 S.Ct. 74, 80 L.Ed. 29; Becker v. St. Louis Union Trust Co., 296 U.S. 48, 56 S.Ct. 78, 80 L.Ed. 35; Helvering v. Hallock, 309 U.S. 106, 60 S.Ct. 444, 84 L.Ed. 604; Fidelity-Philadelphia Trust Co. v. Rothensies, 324 U.S. 108, 65 S.Ct. 508, 89 L.Ed. 782; Commissioner of Internal Revenue v. Estate of Field, 324 U.S. 113, 65 S.Ct. 511, 89 L.Ed. 568; Commissioner of Internal Revenue v. Estate of Church, 335 U.S. 632, 69 S.Ct. 322, 93 L.Ed. 288; Estate of Spiegel v. Commissioner of Internal Revenue, 335 U.S. 701, 69 S.Ct. 301, 93 L.Ed. 330.

7. Regulations 80, 1937 Edition, Article 17.
"Art. 17. Transfers conditioned upon survivorship.

"The statutory phrase, 'a transfer * * intended to take effect in possession or enjoyment at or after his death,' includes a transfer by the decedent (other than a bona fide sale for an adequate and full consideration in money or money's worth) whereby and to the extent that the beneficial title to the property (if the transfer was in trust), or the legal title thereto (if the transfer was otherwise than in trust), remained in the decedent at the time of his death and the passing thereof was subject to the condition precedent of his death. If the tax applies, it does so without regard to the time of the transfer, whether before or

after the enactment of the Revenue Act of 1916.
"On the other hand, if, as a result of the transfer, there remained in the decedent at the time of his death no title or interest in the transferred property, then no part of the property is to be included in the gross estate merely by reason of a provision in the instrument of transfer to the effect that the property was to revert to the decedent upon the predecease of some other person or persons or the happening of some other event."

8. Section 7 of the Technical Changes Act of 1949, 63 Stat. 891, amending section 811(c). See Bitker, Church and Spiegel: The Legislative Sequel, 59 Yale L.J. 395.

9. See note 1, supra.

10. See sections 910 and 911 of the Internal Revenue Code of 1939, now sections 6511 and 6512 of Title 26 of the Code, 26 U.S. C.A. §§ 6511, 6512.

11. Section 207(b). Decedents Dying Before February 11, 1939.
"For the purposes of section 302(c) of the Revenue Act of 1926, as amended, an interest of a decedent shall not be included in his gross estate as intended to take effect in possession or enjoyment at or after his death unless it would have been includible as such a transfer under section 811(c) (2) of the Internal Revenue Code as amended by section 7 of Public Law 378, Eighty-first Congress, approved October 25, 1949 (63 Stat.

provisions of the 1951 amendment, the corpus of the trust was properly includable in Field's estate. These points will be considered seriatim.

(1) To a majority of the court both the language of section 607 of the Revenue Act of 1951 and its legislative history make clear that the purpose of the legislation was to extend to estates of decedents dying after March 18, 1937 and before February 11, 1939 retroactive tax relief similar to that already granted by the Technical Changes Act of 1949 to estates of persons dying after February 10, 1939. The Joint Committee Staff Summary of Provisions of the Revenue Act of 1951 contains the following comment:

"The provisions of the Technical Changes Act of 1949 apply only with respect to decedents dying after February 10, 1939, the date of enactment of the Internal Revenue Code. In the case of such decedents, property is included in the gross estate by reason of the retention of a reversionary interest in a transfer made before October 8, 1949, only if the reversionary interest is express and is worth more than 5 percent immediately before the decedent's death.

On March 18, 1937, Treasury Decision 4729 was issued by the Treasury Department, providing that property should not be taxed by reason of the retention of a reversionary interest. Section 607 of the bill provides that property transferred by a decedent dying after March 18, 1937, and before February 11, 1939 is not to be included in the estate of the decedent because of a possibility of reverter if the regulations in effect at the time of the death of the decedent did not provide for the inclusion of property so transferred." [12]

The legislation would be an empty gesture and its purpose largely, if not completely, frustrated if sections 910 and 911 of the 1939 Code stand as bars to a claim for refund.

■ The 1951 legislation was designed to provide retroactive tax relief under circumstances where Congress must have known that the application of the limitation of section 910 would probably nullify the promised relief, since it was patently unlikely that few, if any, estates of decedents dying between March 18, 1937 and February 11, 1939 would not have paid the estate tax more than three years before a claim for refund under the 1951 amendment could be presented. Failure to refer to the statute of limitations and provide explicitly for lifting its bar does not, in our opinion, justify the Government's contention that section 607 was intended to "remedy the hardship only in those cases still pending in the administrative process or in the Courts." With respect to section 911, the legislative purpose of such a statute, as this court stated in Elbert v. Johnson, 2 Cir., 164 F.2d 421, 423, is "to achieve finality in the determination by the Board of Tax Ap-

---

891), had such section 811(c) (2), as so amended, applied to the estate of such decedent. No refund or credit of any overpayment resulting from the application of this subsection shall be allowed or made if prevented by the operation of the statute of limitations or by any other law or rule of law; except that if the determination of the Federal estate tax liability in respect of the estate of any decedent dying before February 11, 1939, was pending on January 17, 1949, in the Tax Court of the United States or in any other court of competent jurisdiction, or if a decision of the Tax Court of the United States or such other court determining such estate tax liability did not become final until on or after January 17, 1949, then refund or credit of any overpayment resulting from the application of this subsection may, nevertheless, be made or allowed if claim therefor is filed within one year from the date of the enactment of this Act, notwithstanding section 319(a) of the Revenue Act of 1926 or any other law or rule of law which would otherwise prevent the allowance of such refund or credit." 26 U.S.C.A. (I.R.C.1939) § 811 note.

12. 1 C.B.1951, p. 331; see also Supplemental Report C.B.1951, pp. 545, 620; House Report, C.B.1951, pp. 622, 651.

peals (now the Tax Court) of the taxpayer's liability for the year in suit.". But the purpose of the 1951 legislation was exactly the opposite. It was designed to destroy the finality of the Tax Court decisions, even after affirmance by the Supreme Court, as in the Field, Spiegel and Church cases.

█ The question for decision is whether the 1951 statute should be construed to repeal or suspend for purposes here involved the bars provided in sections 910 and 911. We think this question should be answered in the affirmative. The statute may be characterized as a remedial one intended for the relief of certain classes of taxpayers. It is axiomatic that such a statute should be construed in favor of those intended to be benefited.[13] We have already indicated our view that to apply sections 910 and 911 would make the 1951 relief measure a dead letter.[14] The decisions are legion in which courts have refused to be bound by the letter, when it frustrates the patent purpose of the whole statute.[15] As Circuit Justice Holmes said in a much quoted passage in Johnson v. United States, 1 Cir., 163 F. 30, 32:

> "The major premise of the conclusion expressed in a statute, the change of policy that induces the enactment, may not be set out in terms, but it is not an adequate discharge of duty for courts to say: We see what you are driving at, but you have not said it, and therefore we shall go on as before."

█ (2) The next question is whether section 607 was repealed by section 207(b) of the Technical Changes Act of 1953. It was not expressly repealed. Hence the applicable rule is that stated in United States v. Borden Co., 308 U.S. 188, 198, 60 S.Ct. 182, 188, 84 L.Ed. 181:

> "It is a cardinal principle of construction that repeals by implication are not favored. When there are two acts upon the same subject, the rule is to give effect to both if possible."

And after citing numerous cases the court declared, quoting from Wood v. United States, 16 Pet. 342, 362, 10 L.Ed. 987, that there must be "a positive repugnancy between the provisions of the new law and those of the old; and even then the old law is repealed by implication only *pro tanto* to the extent of the repugnancy."

We do not see any such repugnancy as to require holding that the later act destroyed the right to refund granted by the earlier and completely matured by the Commissioner's rejection of the claim on October 20, 1952. Section 207(b) of the 1953 Act is printed in footnote 11, supra. The scope of the two acts is not the same. Section 607 dealt solely with possibilities of reverter not taxable under the Treasury Regulations. As clearly appears from the legislative history of section 207(b) its primary concern was with transfers where the decedent retained a life interest in the income.[16]

---

13. An illustration of this approach is to be found in Helvering v. Bliss, 293 U.S. 144, 55 S.Ct. 17, 79 L.Ed. 246. At pages 150–151 of 293 U.S. at pages 20–21 of 55 S. Ct., the opinion states: "The exemption of income devoted to charity and the reduction of the rate of tax on capital gains were liberalizations of the law in the taxpayer's favor, were begotten from motives of public policy, and are not to be narrowly construed."

14. In Gemsco, Inc., v. Walling, 324 U.S. 244, 255, 65 S.Ct. 605, 612, 89 L.Ed. 921, the court said: " * * * The construction sought

would make the statute a dead letter * * *.
The statute itself thus gives the answer. It does so in two ways, by necessity to avoid self-nullification and by its explicit terms. The necessity should be enough. * * * "

15. Many cases are cited by Judge L. Hand in Cabell v. Markham, 2 Cir., 148 F.2d 737, at page 739. See also Central Hanover Bank & Trust Co. v. Commissioner, 2 Cir., 159 F.2d 167, 169.

16. Report of the House Ways and Means Committee, C.B.1953, p. 531:

Only incidentally did section 207(b) deal with "the reservation of a minute reversionary interest" and it did so without regard to the Treasury Regulations in effect at the time of the decedent's death. We believe that both acts may be given effect, and we reject the Government's contention that section 607 was impliedly repealed.

■ (3) The final question is whether the transfer here involved was nontaxable under the Treasury Regulations in force at the time of Lester Field's death. Article 17 of Regulations 80 (1937 edition) promulgated on March 18, 1937 by T.D. 4729 is set forth in footnote 7, supra. Decision turns upon whether the transfer is governed by Klein v. United States, 283 U.S. 231, 51 S.Ct. 398, 75 L.Ed. 996 or by Helvering v. St. Louis Union Trust Co., 296 U.S. 39, 56 S.Ct. 74, 80 L.Ed. 29 and Becker v. St. Louis Union Trust Co., 296 U.S. 48, 56 S.Ct. 78, 80 L.Ed. 35. The Government concedes that the first paragraph of Article 17 provides that transfers in the class controlled by the Klein decision are subject to tax, whereas the second paragraph provides that transfers in the class controlled by the two St. Louis Union Trust Co. cases are not subject to tax; it then argues that the Field trust is controlled by the Klein case. There the grantor conveyed a life estate to his wife, expressly reserving the fee, and granting the remainder to her only if he should predecease her. The court held that whether the remain-

der "ever would become vested in the grantee depended upon the condition precedent that the death of the grantor happen before that of the grantee," 283 U.S. at page 234, 51 S.Ct. at page 399. Therefore it held the tax properly imposed.

Helvering v. St. Louis Union Trust Co. involved a trust to the decedent's daughter for life with remainder over to persons named. There was also a provision that, if the daughter should die before the settlor, the trust corpus should revert to him. The court held the transfer not taxable because "His death simply put an end to what, at best, was a mere possibility of reverter by extinguishing it; that is to say, by converting what was merely possible into an utter impossibility," 296 U.S. at page 43, 56 S.Ct. at page 76. At page 45 of 296 U.S. at page 77 of 56 S.Ct. the Klein case was expressly distinguished:

"Unlike the Klein case, where the death was the generating source of the title, here, as the court below said, the trust instrument and not the death was the generating source. The death did not transmit the possibility, but destroyed it."

The Becker case was similar to Helvering.

Shortly after the decisions in the two St. Louis Union Trust Co. cases the estate tax regulations were amended by T.D. 4729. The second paragraph of Article 17 codified the law as laid down

"It is believed that the effect of the Church decision should be eliminated in all cases to which it was applicable. Prior legislation has already restored the estate tax law to what it was before the Church decision in respect to all decedents dying after the enactment of the Code and prior to January 1, 1951. The provision in the act accomplishes this same result in respect of decedents dying on or after January 1, 1951.

The bill also provides relief for certain decedents where the death occurred prior to February 11, 1939, and whose estates were burdened with estate tax by reason of transfers made before March 4, 1931, involving the retention of a life estate, the reservation of a minute reversionary in-

terest, or both. Since property transferred in this manner would not be included in the gross estate if the decedent died after February 10, 1939 (and before 1951), the bill would achieve a similar exemption for estates of decedents dying prior thereto. However, it is not felt necessary to open the statute of limitations to any great extent in cases of decedents dying prior to February 11, 1939. It is only in cases in litigation at the time of the Church decision where there would appear to be any undue hardship. In these cases a refund or credit resulting from this provision will be allowed if a claim is filed within 1 year from the date of enactment of this act."

by those cases. What they held is described in Commissioner of Internal Revenue v. Estate of Church, 335 U.S. 632, 642, 69 S.Ct. 322, 328, 93 L.Ed. 288 as follows:

"In each of these cases the Court again, as in May v. Heiner, delved into the question of legal title under rather subtle property law concepts and decided that the legal title of the trust properties there, unlike the situation in the Klein transfer, had passed irrevocably from the grantor. This passage of bare legal title was held to be enough to render the possession or enjoyment section inapplicable."

We think it clear that the Field trust is identical in principle with those cases. The significant fact is that the legal title to the trust property "had passed irrevocably from the grantor," and the provision for reverter, in the words of the Becker case, merely "removes any doubt as to the completeness of the transfer." [17] Accordingly the second paragraph of Article 17 is applicable, and the trust corpus was not subject to estate tax under the Regulations in effect at Field's death.

For the reasons stated in this opinion we think that the court below should have granted the plaintiff's motion for summary judgment rather than the defendant's. Judgment reversed, with directions to award judgment to the appellant.

CLARK, Chief Judge (dissenting).

Judge Frank has aptly said that "some judicial legislation is one of the unavoidable facts of life." Nevertheless he felt it necessary to couple this with the warning that "judicial law-making should always be cautiously employed and should be severely restricted in scope." New England Coal & Coke Co. v. Rutland R. Co., 2 Cir., 143 F.2d 179, 189. So Judge Learned Hand puts it thus: "It is always a dangerous business to fill in the text of a statute from its purposes, and, although it is a duty often unavoidable, it is utterly unwarranted unless the omission from, or corruption of, the text is plain." Harris v. C. I. R., 2 Cir., 178 F.2d 861, 864 (the reversal in Harris v. C. I. R., 340 U.S. 106, 71 S.Ct. 181, 95 L.Ed. 111, is on other issues only). Here the obstacles to rewriting legislation are many and serious, so much so that I feel we must refrain from the attempt. The opinion frankly discloses how difficult it is to find a corruption of the text at all plain—a difficulty measurably increased by the several successive tries at some form of remedial legislation. Thus we are forced to assume congressional inability to express its intent not once, but thrice, and over a four-year period. But more, the legislative intent or desire to advantage this one particular taxpayer seems quite conspicuously unproved, if not actually disproved. And finally the very basis for any relief at all is, I suggest, wholly lacking on the merits, since the ultimate beneficiaries here were quite obviously only contingently named; until Field's death made the gifts absolute and "shed the possibility of reversion," C. I. R. v. Estate of Field, 324 U.S. 113, 116, 65 S.Ct. 511, 512, 89 L.Ed. 568, 159 A.L.R. 230, there was no completed transfer. Thus the interests here were properly taxed and should remain so.

The chronology of events must be kept in mind. Field created his trust in 1922, long before the abberation of May v. Heiner, 281 U.S. 238, 50 S.Ct. 286, 288, 74 L.Ed. 826 (that a remainder after a reversionary life estate in the donor was not taxable as an interest intended to take effect "in possession or enjoyment" at the donor's death), was started on its way in 1930. This bred untold confusion until, after a series of limiting decisions, it was finally overruled in C. I. R. v. Estate of Church, 1949, 335 U.S. 632, 69 S.Ct. 322, 93 L.Ed. 288. Field died in 1937 at the age of 52. The estate taxes in question were paid in portions in 1939, 1940, and 1942, with final settle-

17. Becker v. St. Louis Union Trust Co., 296 U.S. 48, 50, 56 S.Ct. 78, 79, 80 L.Ed. 35.

ment in 1945 after the adverse decision in C. I. R. v. Estate of Field, supra, 324 U.S. 113, 65 S.Ct. 511, 89 L.Ed. 568, 159 A.L.R. 230. The case has been quite literally at an end ever since 1945. The impetus for taxpayer relief came only as a result of the 1949 decisions involving other litigants and (as I discuss more below) other problems. The first statute in 1949 does not help; neither does the third statute in 1953. Only by a favoring interpretation of the 1951 statute can the plaintiff get any help. To me this background does not suggest any impetus toward such favoring interpretation; on the contrary, it lends emphasis to the settled policy of narrowly construing special tax exceptions and selective tax relief. This view has here practical support also in the fact that, as shown by correspondence disclosed in the briefs, appellant's attorney sought special and clear-cut relief from the appropriate congressional committees before the 1953 legislation, with quite adverse results, as the events show.

Since the important statutes are quoted in the opinion herewith, I can make my points as to them somewhat summarily. There is nothing in the crucial 1951 statute to exempt the tax claims there permitted from the two general well-known and long existing bars of the three-year statute of limitations and of any claim of refund once the jurisdiction of the Tax Court had been invoked. I.R.C.1939, §§ 910, 911, now I.R.C.1954, §§ 6511, 6512. But it is highly significant that both the 1949 and the 1953 statutes—in sharp contrast to this statute and in accordance seemingly with general custom—do contain express provisions negativing the operation of such bars. My brothers, in discussing the 1953 legislation, voice some strictures against implied repeals which I deem much more appropriate as applied to the 1951 statute. For the natural conclusion from this wording is that claims under this statute were subject to the usual provisions of bar. The only argument deduced to the contrary is that this would make the 1951 relief measure a dead letter. This is because it would

then apply only to cases pending in the administrative process or in the courts; and, it is said, these must be comparatively few. The latter conjecture, however, is the sheerest guess; we have absolutely no information on the point. But we do know that pressure for tax relief of varied forms was most heavy and persistent. See Bittker, The Church and Spiegel Cases: Section 811(c) Gets a New Lease on Life, 58 Yale L.J. 825, 855–864 (1949), ably criticizing the extensive proposals of the American Bar Association and others and arguing that the case for relief was not proven; and see also the later article, Bittker, Church and Spiegel: The Legislative Sequel, 59 Yale L.J. 395 (1950), suggesting the confusion created by the first modest response. We know from the reported decisions that these cases were pending; the pressures just noted suggest that there were more which were unreported in formal court cases. But be this as it may, the legislation was obviously a response to these claims, with at least some limitations in mind; how is it possible on this scanty background and against the language itself to deduce a much larger purpose than merely to grease the (or some of the) squeaking wheels?

Pursuing the analysis further I fail to see why the 1953 Act does not cover the matter quite thoroughly; it is in effect as though Congress made another try to settle all ambiguities. As the Committee report quoted in note 16 of the opinion makes clear, the statute was planned not "to open the statute of limitations" [felicitous and revealing expression] to any great extent and only to cases in litigation at the time of the Church decision. I cannot follow my brothers in holding the statute not here applicable as applying to transfers "involving the retention of a life estate, the reservation of a minute reversionary interest, or both." Here there were clearly both; true, as I shall now point out, the reversionary interest was much more than minute, but that makes the exclusion from the relief provision all the clearer.

And that leads me to the last point as to the meaning of the interests created by the Field trust. Here I do feel that my brothers have gone astray in what is perhaps the nub of the case. The question is whether Field's death was a condition precedent to the taking of the corpus by Field's sister and the issue of the deceased brother as such condition was defined in the first paragraph of Art. 17 of Regulations 80 (1937). And I think my brothers have failed to note the significance of several provisions of this detailed trust. First is to be noted the definite provision that the corpus reverted to the decedent (who had the income for life) if the two nieces died before he did. This is well stated by Justice Murphy in C. I. R. v. Estate of Field, supra, 324 U.S. 113, 115, 116, 65 S.Ct. 511, 512, 89 L.Ed. 568, 159 A.L.R. 230:

"The error of the court below is self-evident from our discussion in the Fidelity-Philadelphia Trust Co. case [324 U.S. 108, 65 S.Ct. 508, 89 L.Ed. 782]. The trust here was limited in duration to the lives of the decedent's two nieces. But if both nieces died before the decedent, the corpus would have been paid to the decedent rather than to the beneficiaries named in the trust instrument (in this instance the decedent's sister and the issue of his deceased brother). Thus until decedent's death it was uncertain whether any of the corpus would pass to the beneficiaries or whether it would revert to the decedent. Decedent retaining a string attached to all the property until death severed it, the entire corpus was swept into the gross estate and was taxable accordingly."

Thus the only way in which the contingency might be resolved is death of the donor; and the gift over becomes absolute only then. But other provisions of the will necessarily lead to the same result; the gift over to the actual beneficiaries was only the last of still other possibilities and was so stated in the trust. If the donor died before the nieces leaving issue then the corpus went to the issue. Of course he was both legally and actually capable of having issue until his death. The donor then reserved power either by will or by instrument lodged with the trustee to reduce or cancel the corpus of the trust. And the ultimate provision over, which was actually effective, was to take effect only if these other contingencies had not operated. It would seem clear that there was no opportunity for the operation of the second paragraph of Art. 17, Reg. 80, to hold the gift vested subject only to being divested on the operation of a condition subsequent. I take it that no rule of interpretation allows such a conclusion—i. e., vested subject only to be divested—to the last and thus the most remote of several alternative contingent gifts. Indeed, the normal preference is for the first of two stated limitations, while the "occurrence is [interpreted as] a condition precedent of the future interest limited by the second-stated limitation." 3 Restatement, Property § 277 (1940); Simes, Law of Future Interests § 351, and cf. §§ 78, 79 (1936). Under the New York law—which controls the meaning of the limitation, see Estate of Spiegel v. C. I. R., 335 U.S. 701, 69 S.Ct. 301, 93 L.Ed. 330—the result would be the same. Thus there are numerous New York cases finding contingent remainders where the class of beneficiaries as defined cannot be ascertained until death of a life tenant. See, e. g., In re Fischer's Will, 307 N.Y. 149, 160, 120 N.E.2d 688, 694, and cases cited; N. Y. Real Property Law, McKinney's Consol.Laws, c. 50, § 40; N.Y.Personal Property Law, McKinney's Consol.Laws, c. 41, § 11.[1]

1. Among other illustrative cases the following may be cited: In re Bendheim's Estate, 124 Misc. 424, 209 N.Y.S. 141, affirmed 214 App.Div. 716, 209 N.Y.S. 794; In re Bristol's Estate, 147 Misc. 578, 264 N.Y.S. 349; Rasquin v. Hamersley, 152 App.Div. 522, 137 N.Y.S. 578, affirmed 208 N.Y. 630, 102 N.E. 1112; In re Dietz' Will, Sur., 42 N.Y.S.2d 708, affirmed 266 App.Div. 755, 41 N.Y.S.2d 917; In re Baldwin's Will, Sur., 139 N.Y.S.2d 413; In re Jutkovitz' Will, Sur.,

Thus the gift here comes within the exact terms of the condition precedent specified in the first paragraph of the Regulation. It not only does not and cannot be made to come within the language of the second paragraph, but actually presents the converse of the gift there visualized. Instead of a gift to others than the donor, with a slight string contingently back to him, e. g., a reverter back if the named takers did not survive him, the provision here is that the donor and his issue take in all cases *unless* neither he nor his issue has survived *and* he has not abrogated the trust. And going back to the controlling words of the statute, the gift made here is surely one intended to take effect in possession or enjoyment at the donor's death. It is thus substantially similar to that in Klein v. United States, 283 U.S. 231, 51 S.Ct. 398, 75 L.Ed. 996, and unlike those in Helvering v. St. Louis Union Trust Co., 296 U.S. 39, 56 S.Ct. 74, 80 L.Ed. 29, and Becker v. St. Louis Union Trust Co., 296 U.S. 48, 56 S.Ct. 78, 80 L.Ed. 35.

My brothers do not discuss this issue in the necessary terms of condition precedent or subsequent, but content themselves with a quotation from C. I. R. v. Estate of Church, supra, 335 U.S. 632, 642, 69 S.Ct. 322, 93 L.Ed. 288, which, I submit with deference, is subject to misinterpretation when taken out of context. The Court was there indulging in caustic comment upon statutory interpretations which would allow defeat of the estate tax by the interposition of a simple trust and the resulting "easy chore" for "one skilled in the 'various niceties of the art of conveyancing.' " And it points out the express overruling of this conclusion as early as 1940. It would be anomalous, indeed, if this summary analysis made to condemn should some years later be employed as the basis —and the sole basis—for defeating the revenue here, and indeed in all trusts, however simple. The quotation should

139 N.Y.S.2d 120; In re Robinson's Estate, 187 Misc. 489, 62 N.Y.S.2d 373. Here we are dealing with a trust *deed*,

not be called upon for any such duty. It was in fact a bit of overstatement justified by some of the language of the criticized opinions; for in both those cases the initial transfer was such as to pass the *beneficial* interest irrevocably from the grantor except for the slight chance of reversion on condition subsequent. The Regulation was drawn in terms of the actual transfers and naturally not in the terms of these later criticizing dicta. So here I think it indisputable that the remainder to the actual takers only became assured when all contingency was "shed" by the donor's death; and hence under the Klein case and the first paragraph of Art. 17, Reg. 80, it was at all times to be included in the donor's gross estate.

For these several reasons the refund was correctly denied.